## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                            Chapter 7

PAUL HANSMEIER,                                                   No. 15-42460

      Debtor.

---

PAUL HANSMEIER, Debtor,                                           Adv. No. 16-04124

      Plaintiff

      v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

      Defendants.

---

### DEFENDANTS' MOTION TO SET ASIDE ENTRY OF DEFAULT

---

TO: The Debtor and all parties in interest specified in Local Rule 9013-3.

1. Defendants Sandipan Chowdhury and Booth Sweet LLP (collectively "Defendants") respectfully move the Court for the relief requested below and give notice of hearing.

2. The Court will hold a hearing on this motion on 10:30 a.m. on January 17, 2018 in Courtroom 8 West, U.S. Bankruptcy Court, 300 South Fourth Street, Minneapolis, MN 55415.

3. Any response to this motion must be filed and served by delivery not later than January 12, 2018, which is five days before the time set for the hearing. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This bankruptcy case was commenced under Chapter 13 on July 13, 2015. It was converted to a case under Chapter 7 on December 3, 2015. Discharge was waived on January 3, 2018.

5. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bank. P. 5005, and Local Rule 1070-1.

6.   Through this motion, Defendants hereby move for an Order pursuant to Fed. R. Bank. P. 7055(c), 9023 and 9024 and Fed. R. Civ. P. 55(c) setting aside the entry of default entered on January 10, 2017.

7.   The basis for this motion are set forth in the accompanying memorandum of law, the Declaration of Jason E. Sweet and the exhibits annexed thereto, which are incorporated herein by reference.

WHEREFORE, Defendants request entry of an order setting aside the entry of default entered in the adversary proceeding on January 10, 2017.

Dated: January 3, 2018

Respectfully,

s/ Jason E. Sweet

Jason E. Sweet
BOOTH SWEET LLP
Jason E. Sweet (BBO# 668596)
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

*Counsel for Defendants*
*Pro Hac Vice Appearance*

## VERIFICATION

I, Jason Sweet, counsel for Defendants Sandipan Chowdhury and Booth Sweet LLP, certify under penalty of perjury that I have read the Motion, and the accompanying Memorandum in Support of the Motion, and the factual information contained therein is true and correct to the best of my knowledge, information and belief.

s/ Jason E. Sweet

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    Chapter 7

PAUL HANSMEIER,                                           No. 15-42460

     Debtor.

---

PAUL HANSMEIER, Debtor,                                   Adv. No. 16-04124

     Plaintiff

     v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
### MOTION TO SET ASIDE ENTRY OF DEFAULT

---

### FACTS

1. On November 13, 2012, the Debtor, Paul Hansmeier ("Debtor"), filed suit against Sandipan Chowdhury ("Chowdhury") in the District Court of Massachusetts. *AF Holdings, LLC v. Chowdhury*, No. 12-cv-12105 (D. Mass.) (hereinafter "*AF Holdings*").[1]

2. Chowdhury answered with counterclaims against the Debtor on January 4, 2013. *AF Holdings,* ECF No. 7.

3. The District Court of Massachusetts entered a default judgment on Chowdhury's counterclaims jointly and severally against AF Holdings, LLC, Prenda Law, the Debtor, John Steele and Paul Duffy on October 22, 2013. *AF Holdings,* ECF No. 33.

---

[1] On May 6, 2013, the Debtor, John Steele and Paul Duffy (collectively, "Principals") were found to be the real parties in interest for claims brought by AF Holdings and Ingenuity 13. The Principals were held to be jointly and severally liable for the acts of one another, Prenda Law, AF Holdings, and Ingenuity 13. *Ingenuity 13 LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. 2013).

1

4.  On December 3, 2013, the Debtor's motion to vacate the default judgment was denied. The Debtor noticed his appeal from the judgment against him on December 16, 2013. *AF Holdings*, ECF No. 45.

5.  On February 3, 2014, the Debtor opposed certification of the judgment for registration in other districts. *AF Holdings*, ECF No. 61. On March 31, 2014, the District Court of Massachusetts denied the motion. *Id.*, Doc. 66.

6.  The District Court of Massachusetts certified the judgment for registration in other districts [*AF Holdings*, ECF No. 67], and on October 17, 2014, the *AF Holdings* judgment was registered as a lien on the Debtor's homestead in Minnesota.

7.  On July 13, 2015, the Debtor filed a voluntary Chapter 13 Petition. *In re Hansmeier*, No. 15-bk-42460 (Bankr. D. Minn.) (hereinafter "*Hansmeier*"). The Debtor's original schedules listed his interest in the Real Property and identified the *AF Holdings* judgment as a disputed debt under appeal. *Id.*, Doc. 1 at 17.

8.  On September 16, 2015, the Debtor listed for sale his homestead, a property of the bankruptcy estate, without notifying the Chapter 13 Trustee, the U.S. Trustee, or the bankruptcy court. *Hansmeier*, Doc. 126 at ¶ 24.

9.  On September 22, 2015, the Debtor moved to avoid the lien imposed by the *AF Holdings* judgment. *Hansmeier*, Doc. 23. Defendants opposed [*id.*, Doc. 27], and the Debtor later withdrew the motion on November 23, 2015 [*id.*, Doc. 46].

10. The Debtor entered into a purchase agreement to sell his homestead on November 9, 2015, again without notifying the Chapter 13 Trustee, the U.S. Trustee, or the bankruptcy court. *Hansmeier*, Doc. 31. Only after the Court was made aware of the sale did the Debtor move for approval on November 25, 2015. *Hansmeier*, Doc. 49.

11. On December 3, 2015, the Court, being properly apprised of the appeal and disputed debt entered an order approving the sale, providing that proceeds "shall be used at closing only to satisfy the underlying first mortgage on the property, judgment lien, realtor fees, and all other usual and

customary closing costs such as deed recording fees paid to the county." *Hansmeier*, Doc. 59 at ¶ 3.

12. That same day, the bankruptcy was converted to Chapter 7. *Hansmeier*, Doc. 60. The Court's decision to convert was based on its findings that the bankruptcy had been designed only to thwart the collection efforts of creditors, and that Debtor, post-petition, "filed misleading or false documents in this case and provided potentially false testimony at his Rule 2004 examination." *Id.*, Doc. 110 at 9. Debtor appealed the conversion order and filed a motion to stay the case pending appeal, which the Court denied on February 3, 2016. *Id.*, at 13.

13. The Trustee was appointed on December 4, 2015. *Hansmeier*, Doc. 62.

14. On December 15, 2015, the condominium was sold subject to Chowdhury's judgment lien with the Court's authorization. *Hansmeier*, Doc. 59 at ¶ 3. The judgment in favor of Chowdhury, plus applicable interest, was included among the closing costs of the sale. *Id.*, Doc. 113 at 4, 12; *id.*, Doc. 166 at 1. The closing statement for the sale shows the $1,200,000 sale price, and provided for the satisfaction of Chowdhury's lien with $71,620.90 from those proceeds. *Id.*, Doc. 120 at 4 ("Judgment payoff to Best & Flanagan LLP Trust Account ref. Chowdhury"). The Trustee approved the terms of the sale, including the judgment payoff—without condition. *Id.*, at 6 ("Randall Seaver Bankruptcy Trustee-READ and Approved"). The Trustee moved for, and was granted, approval of a settlement and payment. *Id.*, Docs. 120 and 132.

15. On August 4, 2016, the First Circuit vacated the judgment as to the Debtor, John Steele and Paul Duffy, and remanded the matter on a procedural issue—which the automatic stay prevents resolution thereof. *AF Holdings*, ECF No. 76. The judgment against AF Holdings and Prenda Law still stands. *Id*.

16. On October 25, 2016, Trustee made its first demand for recovery of the Judgment. *Exhibit 5*.

17. On October 26, 2016, Defendants provided Trustee citations demonstrating that when a judgment is vacated, restitution is warranted only where retention of the benefit would be inequitable. *Exhibit 5* at 10–12.

18. On October 27, 2016, without directly addressing these citations, the Trustee responded: the payments made on the judgment are subject to restitution under prevailing case law and that he saw no case law which would prevent restitution in this scenario. However, the Trustee provided none of this case law. *Exhibit 5* at 13. When asked for citations, Defendants were informed the burden was on them to find them.

19. On November 3, 2016, Defendants provided Trustee with case law demonstrating the relation back effect of Fed. R. Civ. P. 25(c) to ameliorate the Trustee's concerns. Defendants also proposed that the Trustee assent to Defendants' relief from stay to pursue the issue in Massachusetts or as an alternative, to join the creditors in a joint motion to have the Court decide whether or not the Debtor is liable for any judgments against his alter-egos. See e.g., *Hansmeier*, Doc. 191.

20. On November 16, 2016, Defendants reiterated this proposal to the Trustee and provided further case law supporting their position. *Exhibit 5* at 21–23.

21. The Trustee commenced an adversary proceeding against Plaintiffs on November 18, 2016. *Seaver v. Chowdhury et al*, No. 16-ap-04124 (Bankr. D. Minn.) (hereinafter "*Seaver*"). The complaint was premised upon the First Circuit judgment vacating the district court in *AF Holdings,* and sought to avoid and recover the settlement paid from the proceeds of the sale of Debtor's homestead. *Id.*, Doc. 1 at ¶¶ 33, 39. Despite knowing the Defendants were represented by the same counsel, they were served separately, resulting in two different response dates. Booth Sweet was served on November 23, Chowdhury on December 7.

22. On January 3, 2017, Defendants sent Trustee a 10-page settlement letter outlining the facts and arguments of the Defendants. *Exhibit 5* at 28–38.

23. On January 4, 2017, undersigned suddenly fell ill. *Exhibit 1.* Later that same day, the Trustee responded in the negative to Defendants' settlement offer.

24. Undersigned was admitted the morning of January 5, 2017 for obstructive pyelonephritis, an organ- and/or life threatening infection, and underwent emergency surgery. *Exhibit 1.*

4

25. On January 6, 2017, undersigned, with assistance, emailed the Trustee as to his medical status. *Exhibit 2.*

26. On January 9, 2017, undersigned was discharged and taken across state to his Grandmother's funeral. *Exhibit 3.*

27. During much of this time, undersigned was either unconscious or sedated with morphine. Upon discharge, his activities were restricted and he was given a cocktail of no fewer than seven medications including oxycodone/oxycontin. *Exhibit 4.*

28. On January 10, 2017, undersigned, again with assistance, filed for a continuation of a hearing scheduled for January 12. *Hansmeier*, Doc. 202. The motion identified undersigned's medical condition as the basis for the request. *Id.* Later that same day, the Trustee moved for, and was granted, a default judgment against the Defendants. *Seaver*, Docs. 8, 9 and 10. Defendants answered [*id.*, Doc. 17] and filed to vacate the default on procedural grounds [*id.*, Docs. 13 and 16]; the Trustee opposed [*id.*, Doc. 14]. After hearing argument of counsel, the Court denied Defendants' motion. *Id.*, Doc. 18; *id.* Doc. 23 at pp. 25–32. On March 8, 2017, Defendants noticed their appeal from the default judgment [*Seaver v. Chowdhury et al*, No. 17-cv-00723 (D. Minn.) (hereinafter "*Seaver II*")]; the Trustee opposed.

29. On September 28, 2017, the Trustee presented five proposed settlements with the remaining creditors. *Hansmeier*, Doc. 225, 226, 227, 228 and 229.  Each creditor agreed to accept "20% of its filed claim, as full and final payment on its claim;" *Id.,* at ¶ 2(a). The Court granted the settlements on October 25, 2017. *Id.,* Doc. 232, 233, 234, 235 and 236.

30. On November 9, 2017, the District Court of Minnesota reversed and remanded the January 10, 2017 order of the Bankruptcy Court with instructions to "construe the … default judgment as an entry of default under Rule 55(a)." *Seaver II,* Doc. 18 at 9.

31. On November 15, 2017, the Trustee proposed a settlement to the Court wherein control of the *Seaver* litigation would be transferred to the Debtor in exchange for a contingent security interest in any recoverable proceeds and the dismissal of Debtor's claims against the Trustee. *Hansmeier*, Doc. 247. The terms of the settlement were granted on December 6, 2017. *Id.*, Doc. 258.

32. On December 11, 2017, the Debtor filed to waive discharge. *Hansmeier*, Doc. 260. The waiver
was granted on January 3, 2018. *Id.*, Doc. 262.

## STANDARD OF REVIEW

A court may set aside an entry of default "for good cause shown." Fed. R. Civ. P. 55(c).
"Good cause" has no precise definition, and its meaning depends on the circumstances of the case.
*Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989) ("'Good cause' is a mutable standard, varying from
situation to situation. It is likewise a liberal one—but not so elastic as to be devoid of substance").
"Good cause" is interpreted liberally in favor of relief from default; and as more lenient than the
standard for relief from default judgment. *Johnson v. Dayton Elec. Mfg. Co.,* 140 F.3d 781, 783 (8th
Cir. 1998) ("most decisions … hold that relief from a default judgment requires a stronger showing
of excuse than relief from a mere default order") (*quoting Connecticut Nat'l Mortgage Co. v.
Brandstatter,* 897 F.2d 883, 885 (7th Cir. 1990)).

"When examining whether good cause exists, the … court should weigh whether the conduct
of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious
defense, and whether the other party would be prejudiced if the default were excused." *Stephenson v.
El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008) (citation and internal quotations marks omitted). Such
considerations reflect the "judicial preference for adjudication on the merits." *Johnson,* 140 F.3d at
784 (*citing Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993)). "The inquiry is essentially an
equitable one, and the court is required to engage in a careful balancing of multiple considerations."
*Union Pacific R. Co. v. Progress Rail Servs. Corp.*, 256 F.3d 781, 782 (8th Cir. 2001); *see also
Feeney v. AT&E, Inc.*, 472 F.3d 560, 563 (8th Cir. 2006). These factors guide the court in the exercise
of its discretion but are not intended as a mechanical formula or per se rule. *KPS & Assocs. v.
Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) (determination is case specific and must be
made in practical, commonsense manner, without rigid adherence to or undue reliance on mechanical
formula). The defaulting party, who is the one seeking relief, usually bears the burden of showing
that the factors favor setting aside the default. *Id*.

Although Rule 55(c) issues are committed to the district court's discretion, "when the grant
of a default judgment precludes consideration of the merits of a case, even a slight abuse of
discretion may justify reversal." *Johnson*, 140 F.3d at 785. "The entry of default judgment should be
a 'rare judicial act.'" *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (*quoting Edgar v.

*Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977)). "There is a judicial preference for adjudication on the merits, and it is likely that a party who promptly attacks an entry of default, rather than waiting for grant of a default judgment, was guilty of an oversight and wishes to defend the case on the merits." *Johnson*, 140 F.3d at 784 (citations omitted); *see also United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993). Any doubts as to whether good cause exists should be resolved in favor of the defaulting party. *Id*.

**ARGUMENT**

## I.  Defendants' default was not willful.

Courts must consider whether a party acted willfully in defaulting when determining whether to grant relief from a default. The Eighth Circuit "distinguish[es] between contumacious or intentional delay or disregard for deadlines and procedural rules, and a 'marginal failure' to meet pleading or other deadlines." *Johnson*, 140 F.3d at 784. Brief delays in filing, when the party is ready to answer and proceed, are typically considered excusable. *Id.*

"[E]ven without a satisfactory explanation, relief may be granted where other equitable considerations weigh strongly in favor of setting aside a default judgment." *Feeney*, 472 F.3d at 563; *see also TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697–698 (9th Cir. 2001). Because there is a strong judicial preference for deciding a case on the merits rather than disposing of a case on technical grounds, courts are lenient in assessing whether negligent conduct should be excused, and even culpable conduct is not necessarily a good reason to deny relief from default when there is no prejudice to the opposing party and a meritorious defense is shown. *Id.*; *Johnson*, 140 F.3d at 784.

The First Circuit vacated the judgment at issue as to the Debtor on August 4, 2016, and remanded the matter on a procedural issue.[2] *AF Holdings*, ECF No. 76. The Trustee made his first demand for restitution two months later on October 25, 2016 [*Exhibit 5* at 9], and the subsequent demands that followed were often unaccompanied by supporting law [*see e.g. id.;* at 13, 39]. To each demand, Defendants demonstrated their defenses, provided legal authority and attempted reasonable, good faith attempts to reach a compromise without court intervention. *Exhibit 5* at 10–12, 18, 21–23 and 28–38. These efforts included suggesting the funds be placed in a constructive trust until a final adjudication in the District of Massachusetts was reached; and joining the creditors in a motion to

---

[2] The judgment against Debtor's previously adjudicated alter-egos AF Holdings and Prenda Law still stands. *AF Holdings*, ECF No. 76.

7

hold the Debtor liable for judgments held against his alter-egos. *See e.g. id.*, at 16. Two days after extending an offer to join the creditor's alter-ego motion, the Trustee filed suit against the Defendants for what can best be described as common-law restitution. *Seaver,* Doc. 14 at 10 ("The Plaintiff's Complaint presents a simple claim for restitution and an additional claim for unjust enrichment, both of which are based on the same facts.").

Despite the pending action, Defendants had a good-faith belief that the parties were still discussing alternatives to litigation during this time. The Trustee gave no indication otherwise, and continued to engage in discussions. In point of fact, these talks continued between the Defendants and the Trustee after the December 21st and January 3rd response deadlines cited in the default application—up through January 5th. *Seaver*, Doc. 8 at ¶¶ 13–14; *Exhibit 5* at 28–42. *Jones Truck Lines v. Foster's Truck & Equipment Sales*, 63 F.3d 685, 687–688 (8th Cir. 1995) (excusable neglect found when reason for the delay was pursuit of less costly settlement, and defendant's actions in pursuing settlement was not a flaunting of the deadline).

On January 3, 2016, Defendants made one last attempt to reach an agreement with the Trustee before filing their response to the complaint; laying out their defenses and proposals to the Trustee over a 10–page memorandum. The next day undersigned fell ill suddenly. That afternoon the Trustee declined the Defendants' last proposal. The morning of January 5, 2017, undersigned was admitted for obstructive pyelonephritis, an organ– and/or life–threatening infection, and underwent emergency surgery. But for undersigned's illness, Defendants could have filed a response to the complaint after hearing back from the Trustee on January 4th.

On January 6, 2017, undersigned, with assistance, had emailed the Trustee as to his medical status. Despite the Trustee's knowledge that undersigned was incapacitated, he filed for default on January 10 without confirmation as to undersigned's current medical status and did so side-stepping the protections of Fed. R. Civ. P. 55(a). *Exhibit 2*; *Hansmeier*, Doc. 202.

On January 10, 2017, undersigned, again with assistance, filed for a continuation of a hearing scheduled for January 12. *Hansmeier*, Doc. 202. The motion identified undersigned's medical condition as the basis for the request. *Id.* Before Defendants could file a similar motion herein, the Trustee moved for, and was granted, a default judgment against the Defendants. *Seaver*, Docs. 8, 9 and 10.

It is worth noting that the December 21st and January 3rd response deadlines cited in the default application are incorrect. The Trustee knew the Defendants were represented by the same

counsel, yet were served separately, resulting in two different response dates. Booth Sweet was served on November 23, Chowdhury on December 7. Rule 7012(a) states "[i]f a complaint is duly served, the defendant shall serve an answer within 30 days after the issuance of the summons, except when a different time is prescribed by the court." Fed. R. Bankr. P. 7012(a). Both Defendants were served by mail. "When there is a right or requirement to act or undertake some proceedings within a prescribed period after being served and that service is by mail … three days are added after the prescribed period would otherwise expire under Rule 9006(a)." Fed. R. Bankr. P. 9006(f). The proper due dates therefore were January 1st and 9th of 2017. Again, settlement talks had continued between the Defendants and the Trustee up through January 5th. *Seaver*, Doc. 8 at ¶¶ 13–14; *Exhibit 5* at 28–42. As the Trustee made no mention of the first deadline, Defendants were proceeding under the assumption they had until January 9 to file their joint response.

Any delay caused by Defendants' one day failure to file a response is not such that dictates against vacating the default. *Jones Truck Lines Inc.*, 63 F.3d at 687–88 (thirty-two day delay caused by a mistake; default judgment reversed); *Harre*, 983 F.2d at 130 (denying motion for default where answer was filed twelve days after deadline). The entry of default was granted the same day it was filed [*Seaver*, Doc. 10, 11 and 12], and Defendants moved immediately to vacate it [*id.*, Doc. 13]. As the Court found in a prior proceeding, the length of delay and impact on the judicial proceedings herein are minimal, if any. *Id.*, Doc. 23 at 27:22–3.

Most importantly, neither the motion for default nor this Court found anything to indicate the Defendants acted in bad faith in their delay. *Hansmeier,* Doc. 23 at 28:4–7; *id.,* Doc. 14 at 9. *Cf. TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697–698 (9th Cir. 2001). Rather, Defendants responded to the default promptly, at a time when its counsel was recovering from multiple surgeries and had until the time of their counsel's illness expressed every intent to defend the litigation if a compromise could not be reached. Defendants' conduct was both reasonable and appropriate and Defendants respectfully request the Court set aside the entry of default.

## II. Defendants have demonstrated several meritorious defenses.

When a meritorious defense exists, any doubts should be resolved in favor of the motion to set aside the default, so that cases may be decided on their merits. *See e.g., Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945–946 (9th Cir. 1986) (when timely relief is sought from default and movant has meritorious defense, doubt if any should be resolved in favor of relief from default).

A meritorious defense need not be uncontested, necessarily persuasive or proven before the court may set aside the default: "The issue is whether the proffered evidence 'would permit a finding for the defaulting party,' not whether it is undisputed." *Johnson*, 140 F.3d at 785 (*quoting Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)); *Hayek v. Big Brothers/Big Sisters of Am.,* 198 F.R.D. 518, 524 (N.D. Iowa 2001) (the defense need not be "absolutely convincing" but it "must be sufficient to generate a factual or legal question as to the merits of the claim against the defendant"). "The underlying concern is … whether there is some possibility that the outcome … after a full trial will be contrary to the result achieved by the default." *Stephenson*, 524 F.3d at 914 (citations and internal quotation marks omitted).

The Defendants' available defenses as well as those identified in their motion to dismiss, at a minimum, create factual and legal questions regarding the merits of the claims that could permit a finding for the Defendants. For example, (1) there is no dispute that at the time the Debtor filed his petition, the Defendants had a valid and enforceable judgment lien. *Cf. In re Sherwin*, 388 B.R. 411 (Bankr. S.D. Fla. 2008) (finding the post-petition lapse of a judgement lien did not effect its enforceability as the petition date was the operative time to determine the lien's validity); (2) the complaint identifies no grounds for avoidance and recovery of the disbursement. *Cf. Cen-Pen Corp. v. Hanson,* 58 F.3d 89, 92–93 (4th Cir. 1995) (avoidance of the lien must be based upon a specific statutory provision); and (3) there remains a question as to whether the Court even has jurisdiction over the matter. *Cf.* 10 James Wm. Moore et al., *Moore's Federal Practice* § 55.37 at 55-72 (3d ed. 2012). ("Just as for any other judgment, the court must have subject matter jurisdiction to render a default judgment."). The Court need not decide if the defenses are applicable, let alone controlling, but simply recognize whether the factual or legal support for a meritorious defense exists. In other words, "[t]he court is not required to determine the likelihood of success on the merits; it is only required to determine whether if true, defendant's claim presents a meritorious defense." *Metcalf v. E.I. Du Pont De Nemours & Co.*, 2006 U.S. Dist. LEXIS 46248, *13 (D. Minn. 2006).

Given that Defendants have filed a motion to dismiss, their intention to contest the claims on the merits weighs in favor of denying an entry of default. *American States Insurance Corporation v. Technical Surfacing, Inc.*, 178 F.R.D. 518, 521 (D. Minn. 1998) ("Accordingly, "'[w]hen a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on their merits.'"); *Wendt v. Pratt*, 154 F.R.D. 229, 230 (D. Minn. 1994) (*quoting Lee v. Brotherhood of Maintenance of Way*

*Employees*, 139 F.R.D. 376, 381 (D. Minn. 1991); 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 2593 at 411.

In sum, even if Defendants' response to the complaint had been untimely, [*cf. KPS & Assocs.*, 318 F.3d at 12–13 (there is strong policy in favor of deciding cases on the merits rather than on technical violations)] the pertinent factors all weigh in favor of allowing this action to proceed on its merits, and neither the complaint nor default motion has advanced any cognizable basis for granting an entry of default let alone a default judgment. *See e.g. Cohen v. Kallok*, 365 B.R. 508 (Bankr. E.D. Pa. 2007) (Chapter 7 trustee in fraudulent transfer action against defendants was not entitled to default judgment pursuant to Fed. R. Civ. P. 55, because sufficiency of complaint was questionable). Defendants have legally and factually supported defenses suggesting that all claims against them should be dismissed with prejudice. Each and every one of these defenses has merit sufficient to warrant the setting aside of the entry of default. As a consequence, there is no basis, here, for rejecting Defendants' properly filed motion to dismiss, or for granting an entry of default.

## III. Neither the estate nor the newly-assigned plaintiff will be unduly prejudiced if default set aside.

Prejudice to the opposing party should be considered and balanced with the other factors when deciding whether to grant relief from default. Prejudice is not significant unless it is something greater than would be experienced by the ordinary litigant in being required to litigate on the merits. *Johnson*, 140 F.3d at 785 ("[P]rejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits."); *Stephenson*, 524 F.3d at 915 ("Of course delay alone, or the fact the defaulting party would be permitted to defend on the merits, are insufficient grounds to establish the requisite prejudice to the plaintiff."); *In re Iowa Oil Co.*, 299 B.R. 555, 562 (Bankr. N.D. Iowa 2003). Instead, the asserted prejudice must be "concrete," such as "loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (citation omitted); *Swink v. Pagedale*, 810 F.2d 791, 792–93 n. 2 (8th Cir. 1987) (holding that neither delay alone nor the fact that the defendant will have an opportunity to defend on the merits is the kind of prejudice that justifies denial of a motion to vacate an entry of default); *Forsythe v. Hales*, 255 F.3d 487, 490 (8th Cir. 2001) (default judgment is not appropriate sanction for marginal failure to comply with time requirements). Even when some prejudice exists, the court is not obligated to deny relief from default, as prejudice is only one of the factors to be considered. In addition, courts are inclined to give less weight to prejudice to the opposing party resulting from

delay if the delay is in some part attributable to the opposing party. Whatever delay caused by undersigned's illness was both minimal and excusable. Whereas the delay caused by the Trustee's rush to the courthouse premised on a flawed understanding of local and federal rules, resulted in a year's worth of unnecessary proceedings. *Seaver II*, Doc. 28 at 7–9.

There can be no prejudice in vacating an entry of default which it obtained just days before it was challenged, and the administration of the estate will not be effected, or prejudiced. In fact, there no longer exists an estate. All creditors have been paid in full [*Hansmeier*, Doc. 232, 233, 234, 235 and 236], and the Trustee has abandoned the claim to the Debtor [*id.*, Doc. 258] who in turn has stipulated to the denial of discharge [*id.*, Doc. 262]. This is not a case where vacating the default will result in any loss of evidence, difficulties in discovery or opportunities for fraud. In fact, the motion for default makes no argument in support of potential prejudice to the now defunct estate if the application is denied. Any potential prejudice herein is outweighed by principles of equity and the Court's preference for judgment after the merits of an action have been reviewed. *Johnson*, 140 F.3d at 784.

## CONCLUSION

The three factors discussed above have been often cited, but are not exclusive and are not intended as a precise formula. Courts should consider any matters that bear on the equities of the situation. The underlying consideration is whether good cause for relief from the default exists, and the various factors merely aid in that determination.

Aside from missing the original response deadline by one day, the Defendants have acted diligently in this matter, including defending against motions made in related proceedings, challenging the entry of default within days after learning of it, and seeing the challenge through to appeal. Moreover, the delay caused by the Defendants was negligible and, as acknowledged by this Court, was not motivated by bad faith or an intent to impede this litigation.

The Defendants have offered mitigating reasons for their failure to file a responsive pleading —namely, counsel's medical emergency, which at the time was severe; and their pursuit of a less costly resolution of this matter for all parties. Likewise, they have demonstrated meritorious defenses herein and in their motion to dismiss. There exists no prejudiced to the estate by vacating the entry of default, as none was ever claimed, the estate no longer exists and the creditors have all been paid.

Allowing the case to proceed on the merits is the only way to ensure these interests are preserved. Accordingly, setting aside the entry of default is warranted.

12

Dated: January 3, 2018

Respectfully,

s/ Jason E. Sweet
_____
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com
*Counsel for Defendants*
*Pro Hac Vice Appearance*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                    Chapter 7

PAUL HANSMEIER,                                           No. 15-42460

      Debtor.

---

PAUL HANSMEIER, Debtor,                                   Adv. No. 16-04124

      Plaintiff

      v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

      Defendants.

---

## DECLARATION OF JASON E. SWEET IN SUPPORT OF
## DEFENDANTS' MOTION TO SET ASIDE ENTRY OF DEFAULT

---

I, Jason E. Sweet, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.  I am a partner of the Defendant law firm Booth Sweet LLP, and attorney for Defendant Sandipan Chowdhury, and I am making this declaration in support of Defendants' motion for an Order pursuant to Fed. R. Bank. P. 7055(c), 9023 and 9024 and Fed. R. Civ. P. 55(c) vacating the entry of default entered on January 10, 2017.

2.  Booth Sweet LLP is a two man law firm with no support staff. Much of the firm's work is the defense of individuals who are wrongfully accused of copyright infringement. Often, individuals and firms like the Debtor's take advantage of the lopsided economics inherent in litigation to coerce settlements—namely, it is cheaper to settle than fight. Booth Sweet LLP often represents these individuals who normally could not afford legal services.

3.  Having been in correspondence with the Trustee, I knew the Trustee was well aware of Defendants' defenses, and believed that the case would settle once Trustee realized that its claim had neither legal support nor the support of the creditors it alleged to represent. I was hopeful to

resolve the case without the need to expend resources. I was also concerned with the effect on the unsecured creditors as the Trustee's fees would be entitled to administrative priority.

4. In December 2016, I, along with several creditors had been informed that the Trustee's billables were equivalent to the estate's holdings.

5. I reasonably tried everything in my power to avoid further litigation and to resolve this matter through settlement. Annexed hereto as *Exhibit 5* are true and accurate copies of settlement or otherwise relevant correspondence I had with the Trustee and other creditors.

   a. On October 25, 2016, I spoke with the Trustee after receiving his demand letter for restitution. During that call, the Trustee represented that it was the Debtor who was pushing for restitution and that the Trustee was only following through because he believed it would be easier for the Defendants to deal with him as opposed to Hansmeier. This assertion has never been denied by the Trustee and is supported by an email I received from Ted Sheu that same day. *Exhibit 5* at 9.

   b. On October 26, 2016, the Trustee was sent a letter citing case law and statutes as to why restitution would be inequitable. *Id.*, at 10–12. The Trustee provided no legal support in rebuttal. *Id.*, at 13.

   c. On October 27, 2016, the Trustee was sent a letter proposing two distinct remedies. *Exhibit 5*, at 14–16. Counsel spoke on October 28, at which time the Trustee declined to participate in the joint motion but agreed that if the Defendants could provide legal support for a relation back argument it may give him sufficient grounds to drop the claim. *See e.g., id.*, at 18.

   d. On November 17, 2016, I again reached out to the Trustee with legal support of our position, which the Trustee again rejected out of hand. *Id.*, at 21–23.

   e. On January 3, 2017, the Trustee was sent a detailed settlement letter outlining the facts and legal precedent in support of the Defendants' position. *Id.*, at 28–38. Again, the Trustee provided no legal support in rebuttal. *Id.*, at 39.

   f. The Trustee was made aware repeatedly the Defendants had the support of the other creditors in defending their position. *See e.g., id.* at 22 and 26.

7. The Trustee commenced an adversary proceeding against Plaintiffs on November 18, 2016. Despite knowing the Defendants were represented by the same counsel, they were served separately. Booth Sweet was served on November 23, Chowdhury on December 7. This discrepancy in service resulted in two different response dates for the Defendants—January 1st and 9th of 2017. However, settlement talks continued between the Defendants and the Trustee up through January 5th. As the Trustee made no mention of the first deadline, Defendants were proceeding under the assumption they had until January 9 to file their joint response.

8. Undersigned fell ill on January 4, 2017. I was admitted for obstructive pyelonephritis and underwent emergency surgery the next day. During this time, I was either unconscious or sedated via a morphine drip. I required two additional surgeries during January and February. Annexed hereto as *Exhibit 1* is a true, accurate and redacted copy of the cover page to my discharge papers from the hospital identifying the date I admitted, my diagnosis and surgical procedures.

9. On January 6, 2017, with assistance, I emailed the Trustee from the hospital as to my medical status. Annexed hereto as *Exhibit 2* is a true and accurate copy of the email sent from my phone notifying the Trustee.

10. On January 9, 2017, I was discharged. I was then driven across state to attend the last proceedings of my Grandmother's funeral. Annexed hereto as *Exhibit 3* is a true and accurate copy of my Grandmother's obituary identifying the date and time of her services.

11. Upon discharge, my activities were restricted and I was prescribed several medications including oxycodone/oxycontin. Annexed hereto as *Exhibit 4* is a true and accurate copy of the prescribed medications. The oxycodone was for severe pain management and often left me feeling "cloudy" or confused while taking it. When I didn't take the oxycodone, the pain was substantial and I had difficulty walking and even sitting.

12. On January 10, 2017, undersigned, again with assistance, filed for a continuation of a hearing scheduled for January 12. The motion identified undersigned's medical condition as the basis for the request; and was served on the Trustee via ECF. I had intended to file a similar motion herein, however, I received ECF notification of an order granting default judgment against the Defendants before I could.

13. Given Trustee's knowledge of Defendants' defenses to the claims; our intention to defend; and my medical condition at the time, I was completely surprised when I received notice default judgment had been granted against the Defendants. Especially since I had never received ECF notice that a motion for default judgment had even been filed and any response from the Defendants was only a day late.

14. Despite being in constant contact with the Trustee for the last several months, at no point did the Trustee attempt to contact me to ascertain my current medical status before filing for default.

15. Because the Defendants have a reasonable excuse for the delay in not responding, and meritorious defenses to the complaint, the Court is requested to vacate the entry of default.

**I, Jason E. Sweet, hereby declare pursuant to 28 U.S.C. § 1746 under penalty of perjury that the foregoing is true and correct based on personal knowledge, and a review of the pleadings and other documents filed on the Court's docket set forth above. Executed at Cambridge, Massachusetts on this 3rd day of January, 2018.**

Respectfully,

s/ Jason E. Sweet
_____
Jason E. Sweet
BOOTH SWEET LLP
Jason E. Sweet (BBO# 668596)
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

*Counsel for Defendants*
*Pro Hac Vice Appearance*

S̶W̶E̶E̶T̶,̶J̶A̶S̶O̶N̶



Exhibit 2

## Patient Discharge Plan Patient Copy

# Beth Israel Deaconess Medical Center

## Patient Information

**MRN** ███████

# SWEET,JASON

**Admitted 01/05/17** by ████████

**Primary Physician:** ████████████████████

**Attending Physician:** ████████████

**Discharge Nurse:** ████████████████

**Discharge to:**        Home

### Final Diagnosis

Nephrolithiasis
Acute Kidney Injury

### Major Surgical or Invasive procedures

1/5/2017: cystoscopy, ██████ stent placement (██████
not attempted due to concern for early obstructive pyelonephritis)

Continued on page 2

1

From: jsweet@boothsweet.com
Subject: Request to reschedu e hear ng
Date: January 6, 2017 at 3:01 PM
To: carr e_nordstrom@mnb.uscourts.gov
Cc: Matthew Swanson mswanson@fssk aw.com, Edward P. Sheu esheu@best aw.com, Er n Russe er n@russe firmch cago.com



Exhibit 3

Ms. Nordstrom

There  s a hear ng schedu ed for January 18  n the Hansme er matter, 15-42460.

Unfortunate y, I was adm tted to the hosp ta  Wednesday even ng for an acute k dney  njury. I am be ng heav  y med cated and schedu ed for severa  surg ca  procedures over the next month or so. Is there any chance we can push back the hear ng to the end of February or beg nn ng of March?

Regards,
Jason Sweet

Sent from my  Phone

Exhibit 4

**Shirley Louise (Gale) Sweet(1922 - 2017)**



GREENFIELD - Shirley Louise (Gale) Sweet, 94, passed away on Thursday, January 5, 2017, at Buckley Health Care Center. Born on August 8, 1922, in Pelham, MA, she was the daughter of Lawrence and Edice (Eastman) Gale. She was a graduate of Powers Institute in Bernardston, MA.

Shirley lived most of her formative years in Bernardston, which provided a treasure trove of stories to pass on to her children and grandchildren. She remembered and shared in great and fascinating detail stories of growing up in a rural small town and the adventures of her parents, Pamp and Edice.

Shirley married Eugene ""Ken"" Sweet on May 12, 1945, and they spent all of their married life in Greenfield. Ken predeceased Shirley on July 17, 1996. She is also predeceased by siblings, Kenneth, Ruth, Katherine (Kitty), Johnny, and Roger, as well as a grandson, Ethan Sicotte. She is survived by her loving sister, Skippy Skalski, of Deerfield, MA.

Shirley worked as a bookkeeper at the JC Penney store and at Sigda Flower Shop. She was an active member at Robbins Memorial Church and she made many pie balls over the years for their famous apple pies. The church was a major foundation in her life and for many years she was also an active participant in the Interfaith Council of Churches. She was a loving mother, grandmother, and great-grandmother. Shirley and her husband, Ken, provided a solid, loving base of support for a large extended family. They were bedrocks in their church and community.

Survivors include two sons, Steven (Kathleen Connor) of Salvo, NC and Karlton (Harriette Block) of Chicopee, MA; two daughters, Cynthia Rothschild (Andrew) of Greenfield and Melinda Sicotte (Dennis) of E. Wareham, MA; her loving sister, Skippy Skalski, of Deerfield, MA; Eight grandchildren: Jason Sweet (Kacy Hughes), Alison Sweet (Sean Phelan), Casey Rothschild (Beth), Abigale Escobar (Ubaldo), Branch Rothschild, Benjamin Sweet-Block (Amy Daniels), Sadie Perry and Aaron (Colette) Sicotte; 16 great-grandchildren.

A memorial service will be held Monday 1/9/17 at 10 a.m. at Robbins Memorial Church, 55 Munson Street, Greenfield with the Rev. Dale Proulx officiating. Burial will be private.

Memorial contributions may be made to Robbins Memorial Church, 55 Munson Street, Greenfield, MA 01301; Lifepath, 330 Montague City Road, Turners Falls, MA 01376; or to the Buckley Health Care Center Activities Fund, 95 Laurel Street, Greenfield, MA 01301.

Arrangements are under the direction of the Kostanski Funeral Home. Sympathy message available at www.kostanskifuneralhome.com.

**Funeral Home**

**Kostanski Funeral Home**
1 Kostanski Square Turners Falls, MA 01376
(413) 863–2447

**Published in The Recorder on Jan. 7, 2017**

BETH ISRAEL DEACONESS MEDICAL CENTER
MEDICATION LIST 01/09/2017 Page: 1
SWEET,JASON
Unit Number: ▮▮▮ DOB: ▮▮▮
Allergies:
Doctor's Name:_____ Office Phone Number:_____
Nurses's Name:_____ Nurse's Station Phone Number:_____

---

## My Medication List

Below is an updated list of the medications I should take at home, and when I should take them. I should stop taking any medication that is not on this list. I understand that I should share this list with my healthcare providers, make sure it is up to date and accurate, and carry medication information with me at all times in the event of emergency situations.

| MEDICATIONS | Morning | Midday | Evening | Bedtime |
|---|---|---|---|---|
| ███████ | ███ | ███ | ███ | ███ |
| ███████ | ███ | ███ | ███ | ███ |
| ███████ | ███ | ███ | ███ | ███ |
| ███████ | ███ | ███ | ███ | ███ |
| OxyCODONE (Immediate Release) 5 mg every 4 hours | | ███ | | ███ |
| ███████ | ███ | ███ | ███ | ███ |

*Continued on next page

1

From: **Matthew Swanson** mswanson@fssklaw.com
Subject: RE: Paul Hansmeier/Bky No. 15-42460 - Claim Nos. 9, 10, 15 and 16
Date: October 24, 2016 at 4:42 PM
To: jsweet@boothsweet.com



Jason:

Are you representing Chowdhury, or is Best & Flannagan?

Thank you.

Matt S.

**From:** jsweet@boothsweet.com [mailto:jsweet@boothsweet.com]
**Sent:** Monday, October 24, 2016 10:56 AM
**To:** Matthew Swanson
**Subject:** Re: Paul Hansmeier/Bky No. 15-42460 - Claim Nos. 9, 10, 15 and 16

Matt

We'll be filing for a stay in the Illinois matter shortly.

There's a new wrinkle now. Hansmeier had appealed the ruling in *AF Holdings v. Chowdhury*. At the time though, we had an enforceable judgement which we collected on from the estate. The appellate court has since remanded the matter back to the district court saying Hansmeier was not given due process to repudiate the claims against him. So, we'll be moving for a stay in that matter as well.

Also, I'm assuming you've seen Hansmeier's plea submission in his disbarment proceedings?

Jason

From: **Matthew Swanson** mswanson@fssklaw.com 
Subject: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
Date: October 25, 2016 at 12:14 PM
To: Edward P. Sheu esheu@bestlaw.com
Cc: jsweet@boothsweet.com

Counsel:

Please see attached correspondence.

Thank you.

Matt Swanson

Matthew D. Swanson, Attorney
Fuller, Seaver, Swanson & Kelsch, P.A.
12400 Portland Ave. S., Suite 132
Burnsville, MN 55337
mswanson@fssklaw.com
(952) 890-0888 (phone)
(612) 719-1700 (cell)
(952) 890-0244 (fax)





10.25 Ltr to E. Sheu re.
Judgment.pdf

LAW OFFICE

# FULLER, SEAVER, SWANSON & KELSCH, P.A.
A PROFESSIONAL ASSOCIATION

Timothy D. Fuller
Randall L. Seaver
Matthew D. Swanson
Chad A. Kelsch

PORTLAND CORPORATE CENTER
12400 PORTLAND AVENUE SOUTH, SUITE 132

BURNSVILLE, MN 55337

Telephone: (952) 890-0888
Facsimile: (952) 890-0244

**Also sent via email at esheu@bestlaw.com**

October 25, 2016

Edward P. Sheu
Best & Flanagan, LLP
60 South Sixth Street
Suite 2700
Minneapolis, MN 55402

RE:   Paul Hansmeier/BKY 15-42460
      AF Holdings, LLC v. Chowdhury/12-cv-12105-IT

Counsel:

It has been brought to my attention that the Judgment against the Debtor Paul Hansmeier in the United States District Court for the State of Massachusetts, Civil Action No. 12-cv-12105-IT, was vacated on appeal.  I have attached a copy of the August 4, 2016 Judgment from the 1st Circuit Court of Appeals for your reference.

As you are aware, the judgment, which has now been vacated, was the basis for your client's claim in the debtor's bankruptcy case.  At the time of the bankruptcy filing, that judgment had attached as a lien to the debtor's homestead, and ultimately resulted in the payment of $71,620.90 to your client upon the sale of the debtor's residence.

This letter is a demand for the return of the $71,620.90 paid to your client pursuant to the vacated judgment.  Those funds are property of the bankruptcy estate and subject to recovery by the Trustee.  Pursuant to well established case law "[i]t is a long-standing legal principle that '[a] person who has conferred a benefit upon another in compliance with a judgment, or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable....' " *In re Popkin &* Stern, 263 B.R. 885, 889 (B.A.P. 8th Cir. 2001); Mohamed *v. Kerr,* 91 F.3d 1124, 1126 (8th Cir.1996) (alteration in original) (quoting Restatement of Restitution § 74 (1937)).  This remedy is the same under Minnesota and Massachusetts law.

3

Please forward a check in the amount of $71,620.90 to my attention within 7 days from the date of this letter.  If I have not received a check within the allotted time period, I will proceed with appropriate legal remedies to recover the funds for the bankruptcy estate.

Thank you.

Sincerely,

Matthew D. Swanson
*mswanson@fssklaw.com*

cc: Jason Sweet

2

# United States Court of Appeals
## For the First Circuit

No. 13-2535

_____

AF HOLDINGS, LLC,

Plaintiff,

v.

SANDIPAN CHOWDHURY,

Defendant, Appellee.

--------------------------------------------------------------------------

JOHN L. STEELE; PAUL A. DUFFY; PAUL R. HANSMEIER,

Interested Parties, Appellants,

MARK LUTZ,

Interested Party.

_____

Before

Lynch, Thompson and Kayatta,
<u>Circuit Judges.</u>

_____

**JUDGMENT**

Entered: August 4, 2016

After carefully considering the record and briefs on appeal, we <u>vacate</u> and <u>remand</u>.

The appellants moved to vacate the judgment under Rule 60(b)(4) for lack of personal jurisdiction because they were never named as parties to the counterclaims and properly served. It was undisputed below that the appellants were not properly named and served. Absent some exception, which was not established, a judgment cannot be entered against those who are not made parties through proper service. <u>Shank/Balfour Beatty, a Joint Venture of M.L. Shank, Co., Balfour Beatty Constr.</u> v. <u>Int'l Bhd. Of Elec. Workers Local 99</u>, 497 F.3d 83, 94 (1st Cir. 2007).

When personal jurisdiction is lacking, relief is mandatory, and the appellants did not have to show various factors required for relief under other subsections of Rule 60(b). M & K Welding, Inc. v. Leasing Partners, LLC, 386 F.3d 361, 365 (1st Cir. 2004).

Contrary to the appellee, the fact that non-parties do not, or cannot, dispute alter ego allegations that would permit both serving them and holding them liable on the judgment does not obviate the need to call them before the court before entering judgment. Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100 (1969).

Vacated and remanded. 1st Cir. Loc. R. 27.0(c).

By the Court:

/s/ Margaret Carter, Clerk

cc:
Honorable Joseph L. Tauro
Robert Farrell, Clerk of Court
AF Holdings, LLC
Jason E. Sweet
Daniel G. Booth
John L. Steele
Paul A. Duffy
Paul R. Hansmeier



From: **Edward P. Sheu** esheu@bestlaw.com 📎
Subject: FW: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
Date: October 25, 2016 at 2:02 PM
To: jsweet@boothsweet.com

Jason—do you want to respond directly to the trustee? I have to send a letter to him saying we were a conduit of the money and just received a $2,500 fee.

What's the status of the remand to the district court in Massachusetts, and are you going to try to get the judgment again?

Edward "Ted" Sheu
Attorney
DIRECT 612.349.5656  V-CARD

**BEST & FLANAGAN LLP**
60 South Sixth Street, Suite 2700,   Minneapolis, Minnesota 55402
TEL 612.339.7121  FAX 612.339.5897  BESTLAW.COM

CONFIDENTIAL: This email may contain confidential and privileged information and is for the intended recipient only. If you are not the intended recipient, please refrain from reading and delete all copies of this email. IRS NOTICE: Any tax advice contained in this email and any attachment was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties that may be imposed under the tax laws, or (2) promoting or recommending any transaction.

**From:** jsweet@boothsweet.com
**Subject:** Re: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
**Date:** October 25, 2016 at 2:07 PM
**To:** Edward P. Sheu  esheu@bestlaw.com

I already called him. Yes, we're moving ahead to amend the judgment in compliance with the remand.

I'm not sure the case for restitution is so clear cut, and it didn't sound like he was convinced either.

From:    **Edward P. Sheu**  esheu@bestlaw.com
Subject:  RE: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
Date:    October 25, 2016 at 2:32 PM
To:    jsweet@boothsweet.com



Sounds good—I just called him too and he said Hansmeier is mostly the one pushing for this.

Edward "Ted" Sheu
Attorney
DIRECT 612.349.5656 <u>V-CARD</u>

**BEST & FLANAGAN LLP**
60 South Sixth Street, Suite 2700,   Minneapolis, Minnesota 55402
TEL 612.339.7121  FAX 612.339.5897  <u>BESTLAW.COM</u>

CONFIDENTIAL: This email may contain confidential and privileged information and is for the intended recipient only. If you are not the intended recipient, please refrain from reading and delete all copies of this email. IRS NOTICE: Any tax advice contained in this email and any attachment was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties that may be imposed under the tax laws, or (2) promoting or recommending any transaction.

From: jsweet@boothsweet.com  🖈
Subject: Re: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
Date: October 26, 2016 at 3:43 PM
To: Matthew Swanson  mswanson@fssklaw.com
Cc: Edward P. Sheu  esheu@bestlaw.com

JS

Matt

Please see the attached document.

J



10-26 Restitution Reply
Ltr.pdf

# BOOTH SWEET LLP

32R Essex Street  Cambridge, MA 02139
T: 617.250.8602 | F: 617.250.8883 | www.boothsweet.com

October 26, 2016

Matthew Swanson
Fuller, Seaver, Swanson & Kelsch, P.A.
Portland Corporate Center
12400 Portland Avenue South, Suite 132
Burnsville, MN 55337

RE:   Paul Hansmeier/BKY 15-42460
      AF Holdings, LLC v. Chowdhury/12-cv-12105-IT

Counsel:

Restitution would be inequitable.

When a judgment is reversed or vacated, restitution is warranted only where retention of the benefit would be inequitable. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 877 (1st Cir. 1995) (citing Restatement of Restitution § 74 (1937) cmt. c); *Mohamed v. UNUM Life Ins. Co.*, 129 F.3d 478, 480 (8th Cir. 1997). The burden is on the claimant seeking restitution to "show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." *Atlantic C.L.R. Co. v. Florida*, 295 U.S. 301, 309 (1935). As Justice Cardozo put it: "The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it. " *Id*. at 310.

The Chowdhury judgment was entered against AF Holdings LLC on September 30, 2013. Because Paul Hansmeier, John Steele, and Paul Duffy used used AF as an alter ego or alias, the judgment was re-entered against them and others jointly and severally with AF on October 22, 2013. The re-entered judgment was vacated on appeal on August 4, 2016 for lack of service on Hansmeier, Steele, and Duffy. But AF did not appeal from the valid judgment against it, and AF is merely one of the empty shell companies that Hansmeier, Steele, Duffy, and their agents employed in spurious litigation against Chowdhury and others. *See Ingenuity 13 LLC v. Doe*, 2013 U.S. Dist. LEXIS 64564, *3, 5-6 (C.D. Cal. May 6, 2013). It would therefore be inequitable for Hansmeier or his estate to recapture funds that he paid to cover AF's liability, and his liability for AF's actions on his behalf. As an alter ego of AF Holdings, he can be held liable for the judgment against it upon proper service. *See Minnesota Mining & Mfg. Co. c. Eco Chem, Inc.*, 757 F.2d 1256, 1632-64 (Fed. Cir. 1985) ("The precedents establish that a court which has jurisdiction over a corporation has jurisdiction over its alter egos.") (citing *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634 (8th Cir. 1975)).

Restitution "may be denied … where, subsequent to the judgment, events have occurred which entitle the payee to the amount paid." Restatement of Restitution § 74 (1937) cmt. c. Several such events since the re-entered judgment of October 22, 2013 would make restitution inequitable.

First, Hansmeier now "unconditionally admits" that he, Steele, and Duffy instituted and brought AF's lawsuits nationwide. See Stipulation for Discipline ¶ 4, *In re Paul Robert Hansmeier*, File No. A5-1885 (Minn. July 1, 2016); Petition for Disciplinary Action ¶¶ 1-8, *id*. (Minn. Oct. 28, 2015). The

Minnesota Supreme Court has entered a final order in the disciplinary action against Hansmeier based on the stipulation in which he admitted his controlling role in AF and Prenda Law. Order, *id.* (Minn. Sept. 12, 2016). He would therefore be precluded from denying it.

In addition, the Ninth Circuit affirmed the sanction against Hansmeier, Steele, and Duffy, accepting the district court's finding that they were the principals who set up and operated AF and other shell companies for a nationwide scheme of abuse litigation. *Ingenuity 13 LLC v. Doe*, 651 F. App'x 716 (9th Cir. 2016). In a subsequent proceeding, the district court noted that "all sanctioned parties not deceased or defunct have agreed not to further challenge the sanction order." *Id.*, 2016 U.S. Dist. LEXIS 112443, *10 (C.D. Cal. Aug. 23, 2016). He would therefore be precluded from denying that issue as well. Meanwhile, AF and the ostensibly distinct Prenda Law both now "appear to be defunct." *Id.* *6 n.3.

Because restitution would not be equitable, no effort should be expended to recover the funds for the bankruptcy estate.

Thank you.

Regards,

Jason Sweet
jsweet@boothsweet.com

cc: Edward Sheu

From: **Matthew Swanson** mswanson@fssklaw.com 📎
Subject: RE: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
Date: October 27, 2016 at 11:36 AM
To: jsweet@boothsweet.com
Cc: Edward P. Sheu esheu@bestlaw.com

**\*Rule 408 Settlement Correspondence\***

Jason:

Thank you for your response.  Unfortunately, I do not see the merit of your argument.

Your client received bankruptcy estate funds on account of a judgment which has been vacated.  The Bankruptcy Estate not only has a claim for restitution, but also one for unjust enrichment.  I have seen no case law which would prevent restitution in this scenario.

As to the equity argument, it would be inequitable to the creditors of the bankruptcy estate to allow your client to retain funds obtained through a vacated judgment.  You may be able to obtain a judgment against Hansmeier now, but as of the filing date there wasn't a valid judgment.  As such, the payments made on that judgment are subject to restitution under prevailing case law.  In the alternative, the bankruptcy estate could obtain a judgment against the recipients under an unjust enrichment theory, for similar reasons, payment to a "creditor" on a void Judgment.

If you are not willing to provide a settlement offer to resolve this matter the bankruptcy estate will pursue this claim.

Thank you.

Matt S.

Matthew D. Swanson, Attorney
Fuller, Seaver, Swanson & Kelsch, P.A.
12400 Portland Ave. S., Suite 132
Burnsville, MN 55337
mswanson@fssklaw.com
(952) 890-0888 (phone)
(612) 719-1700 (cell)
(952) 890-0244 (fax)



**From:** jsweet@boothsweet.com  📎
**Subject:** Re: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
**Date:** October 27, 2016 at 2:51 PM
**To:** Matthew Swanson  mswanson@fssklaw.com
**Cc:** Edward P. Sheu  esheu@bestlaw.com

Matt

Please see the attached judgment.

J



10-27 Settlement
Correspond….pages.pdf

# BOOTH SWEET LLP

32R Essex Street  Cambridge, MA 02139
T: 617.250.8602  |  F: 617.250.8883  |  www.boothsweet.com

## *RULE 408 SETTLEMENT CORRESPONDENCE*

October 27, 2016

Matthew Swanson
Fuller, Seaver, Swanson & Kelsch, P.A.
Portland Corporate Center
12400 Portland Avenue South, Suite 132
Burnsville, MN 55337

RE:    Paul Hansmeier/BKY 15-42460
       AF Holdings, LLC v. Chowdhury/12-cv-12105-IT

Matt:

I understand your argument, but you have to understand our client's.

There is no dispute that Hansmeier and AF Holdings are the same entity. The Ninth Circuit held as much in *Ingenuity 13*. More so, Hansmeier "unconditionally admits" that he, Steele, and Duffy instituted and brought AF's lawsuits nationwide. See Stipulation for Discipline ¶ 4, *In re Paul Robert Hansmeier*, File No. A5-1885 (Minn. July 1, 2016); Petition for Disciplinary Action ¶¶ 1-8, *id*. (Minn. Oct. 28, 2015). The Minnesota Supreme Court has entered a final order in the disciplinary action against Hansmeier based on the stipulation in which he admitted his controlling role in AF and Prenda Law. Order, *id*. (Minn. Sept. 12, 2016).

Here, Mr. Chowdhury was accused by Hansmeier/AF of something he didn't do and forced to defend himself in meritless litigation. And when he did defend himself, Hansmeier placed Chowdhury's name on Prenda's website, defaming him as "proven guilty"; a "criminal"; etc.

At the time of the bankruptcy, Chowdhury held a valid judgment, certified by the District Court of Massachusetts, then domesticated in Minnesota and placed as a lien on Hansmeier's property.

Hansmeier acknowledged he was a party to the proceedings in his Statement of Financial Affairs, also stating he was appealing the decision. Knowing of the appeal, the bankruptcy court and the trustee had an opportunity to evaluate the estate's interest, if any, in the litigation, found none and signed off on the satisfaction of the judgment.

That was almost a year ago, and now Chowdhury is being asked to return the judgment or face another lawsuit.

You say "it would be inequitable to the creditors … to allow your client to retain funds obtained through a vacated judgment", but isn't Chowdhury a creditor deserving of equity as well?

I haven't seen anything exactly on point that calls for restitution in a case such as this. The cases I have seen deal with a judgment that has been **reversed**. Here, the judgment has been **vacated** to comply with procedure. More importantly, the uncontested valid judgment against AF still stands. And herein lies the rub.

Chowdhury is moving to substitute Hansmeier as a counterdefendant pursuant to Rule 25(c). Under the applicable rule of civil procedure, if granted, Hansmeier's substitution relates back to the judgment against AF. Meaning if Chowdhury complies with the request for restitution, and is later successful in his motion for substitution, he would then have a claim against the estate.

Rather than continue to go in circles, here's what we propose.

1. If the trustee/estate assents to or joins our motion to lift the stay in this matter, we can resolve it in Massachusetts. If we're unable to attach liability to Hansmeier, then restitution is proper and you won't have wasted any of your time in litigation.

OR

2. The trustee/estate and Chowdhury file a joint motion to have the bankruptcy court decide whether or not Hansmeier is liable for any judgments against AF, Prenda, etc.

Let me know when you'd like to schedule a time to talk.

Regards,
Jason

From: **Matthew Swanson** mswanson@fssklaw.com
Subject: RE: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
Date: October 27, 2016 at 5:41 PM
To: jsweet@boothsweet.com



I'll be in all day, let me know what works for you.

Matt S.

---

**From:** jsweet@boothsweet.com [mailto:jsweet@boothsweet.com]
**Sent:** Thursday, October 27, 2016 4:40 PM
**To:** Matthew Swanson
**Subject:** Re: Hansmeier Bky No. 15-42460/ Chowdhury Judgment

Yes. What time?

Sent from my iPhone

On Oct 27, 2016, at 5:30 PM, Matthew Swanson <mswanson@fssklaw.com> wrote:

> Jason:
>
> Are you available to talk tomorrow?
>
> Matt S.
>
> Matthew D. Swanson, Attorney
> Fuller, Seaver, Swanson & Kelsch, P.A.
> 12400 Portland Ave. S., Suite 132
> Burnsville, MN 55337
> mswanson@fssklaw.com
> (952) 890-0888 (phone)
> (612) 719-1700 (cell)
> (952) 890-0244 (fax)
>
> <image001.jpg>

From: **Matthew Swanson** mswanson@fssklaw.com
Subject: RE: Hansmeier Bky No. 15-42460/ Chowdhury Judgment
Date: November 3, 2016 at 10:09 AM
To: jsweet@boothsweet.com



That will work.   I'll take a look at the caselaw.

Matt S.

---

**From:** jsweet@boothsweet.com [mailto:jsweet@boothsweet.com]
**Sent:** Thursday, November 03, 2016 9:05 AM
**To:** Matthew Swanson
**Subject:** Re: Hansmeier Bky No. 15-42460/ Chowdhury Judgment

Sorry Matt. I'm getting hammered here working on a brief for the 6th Cir. and working with the FBI on our mutual friends. Here's the case law I promised you.

Want to talk in an hour or so?

The First Circuit and other circuits have "sanctioned the use of Rule 25(c) to join parties as alter egos and hold them liable for the full judgment." *Rodríguez-Miranda v. Benin*, 829 F.3d 29, 41-45 (1st Cir. 2016) (*citing 3M v. Eco Chem, Inc.*, 757 F.2d 1256 (Fed. Cir. 1985)). After a judgment is rendered against a corporation, controlling officers may who operate the business as an alter ego may be joined and subject to liability. *Id.* at 41-42; *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 17-18 (7th Cir. 1977). Rule 25(c) permits substitution "even after judgment has been rendered." *Negrón-Almeda v. Santiago*, 579 F.3d 45, 53 (1st Cir. 2009) (*quoting Explosives Corp. of Am. v. Garlam Enters. Corp.*, 817 F.2d 894, 905 (1st Cir. 1987)). This procedural substitution does not require a new proceeding. "The rule is 'designed to allow an action to continue unabated when an interest in a lawsuit changes hands,' rather than requiring the initiation of an entirely new lawsuit." *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 191 (8th Cir. 1995) (*quoting General Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258, 261 (D. Del. 1982)). Parties may be added or substituted under Rule 25(c) even after a default judgment. *United States v. Aiken*, 867 F.2d 965, 967 (6th Cir. 1989) (affirming substitution); *3M*, 757 F.2d at 1258-59 (affirming addition of "successors in interest and alter egos" of company subject to default judgment).

On Nov 3, 2016, at 10:00 AM, Matthew Swanson <mswanson@fssklaw.com> wrote:

Jason:

Do you have time to speak this morning?

Matt S.

From: jsweet@boothsweet.com 📎
Subject: Trustee Objections in Hansmeier
Date: November 17, 2016 at 2:29 PM
To: Matthew Swanson mswanson@fssklaw.com



Matt

I was expecting a call from you last Monday or Tuesday before I left for my hearing in NY. Anyway, I got your email and recent filing. Here's our response:

**AF Holdings v. Chowdhury,** No. 1:12-cv-12105

A debtor's alter-ego liability attaches at the moment in time in which the factual elements, as dictated by law, have materialized.

AF Holdings ("AF") & Prenda Law were adjudicated as alter-egos of Hansmeier in *Ingenuity 13* on March 6, 2013. *Ingenuity 13 v. Doe,* 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. 2013). See also, *AF Holdings LLC v. Navasca,* No. 12-cv-02396-EMC (NJV), 2013 U.S. Dist. LEXIS 149156 (N.D. Cal. Sept. 16, 2013) (adopting as preclusive the *Ingenuity 13* findings about the relationship between AF and Hansmeier); Stipulation for Discipline ¶ 4, *In re Paul Robert Hansmeier,* File No. A5-1885 (Minn. July 1, 2016); Petition for Disciplinary Action ¶¶ 1-8, *id.* (Minn. Oct. 28, 2015). The Minnesota Supreme Court has entered a final order in the disciplinary action against Hansmeier based on the stipulation in which he admitted his controlling role in AF and Prenda Law. Order, *id.* (Minn. Sept. 12, 2016).

The Ninth Circuit affirmed *Ingenuity 13* on both the alter-ego and litigation control grounds. *Ingenuity 13 v. Doe,* No. 13-55859 (9th Cir. June 10, 2016).

The judgment in *Chowdhury* was entered against AF and Prenda, Steele, Hansmeier and Duffy as aliases on October 22, 2013.

Even though the order in *Chowdhury* was later vacated against Steele, Hansmeier and Duffy—it was done so on procedural grounds with instructions to cure. The judgment against AF and Prenda *still stands.*

Hansmeier did not file for bankruptcy until July 13, 2015. Consequently, he was established as an alter-ego pre-petition. Likewise, Chowdhury perfected his lien against Hansmeier pre-petition.

Because AF, Prenda and Hansmeier are alter-egos of each other, any judgments or liens against AF or Prenda attach to Hansmeier. See e.g. *Greaves v. AG (In re Two Springs Mbrshp. Club),* 408 B.R. 453 (N.D. Ohio 2009). See also *Pavers & Road Builders District Council Welfare Fund et al. v. Core Contracting of N.Y., LLC, et al.,* 536 B.R. 48, 51 (E.D.N.Y. Aug. 18, 2015); *Block v. Warehouse Consultants (In re Americana Servs.),* 175 B.R. 1018, 1023 (W.D. Mo. 1994).

**Prenda Law & Paul Duffy v. Godfread & Cooper:** Nos. 1:13-cv-01569 & 1:13-cv-04341

Again, Prenda Law was found to be an alter-ego of Hansmeier pre-petition.

Judgment was entered against Prenda Law on Oct. 17, 2016 in the amount of $674,206.94 (+ pre-judgment interest as allowed).

Any judgments or liens against Prenda attach to Hansmeier.

To the extent the trustee objects to the claims (Nos. 9, 10, 15 and 16) as being duplicative, we have no objection to withdrawing two of the claims. (Correct me if I'm wrong, but 9 &10 were submitted when it was a Ch. 13 proceeding; 15 & 16 when converted to Ch. 7).

**Lightspeed Media v. Smith,** No. 3:12-cv-00889

The Seventh Circuit did not reverse the order sanctioning Steele and Hansmeier—it vacated and remanded, and further proceedings in the district court are pending.

The Seventh Circuit agreed in all respects with the grounds for finding them in civil contempt, since both had denied their ability to pay an earlier sanction award at "the very time when Steele and Hansmeier were emptying accounts the controlled of sums vastly in excess of the sanctions they owed. This was obviously egregious behavior, and a flat violation of the district court's order." The Seventh Circuit vacated the remedy for the contempt, to the extent it duplicated a remedy for a separate discovery sanction entered against Steele and Duffy (and affirmed in full).

On remand, the district court held a show-cause hearing against Steele on October 20.

Because we are awaiting a ruling from the court, we're a little leery of letting Hansmeier out. The court may, on its own, decide to hold Hansmeier accountable, so we'd prefer to err on the side of caution.

_____

The alter ego theory of liability would apply equally to claims 11 & 18. Those claims I believe, are now being handled by Erin Russell. Also, I believe Ms. Russell is handling the similarly situated *Guava* case.

_____

I had previously offered to file a joint motion to have the bankruptcy court decide whether or not Hansmeier is liable for any judgments against AF, Prenda, etc. so we wouldn't have to engage in this sort of piecemeal motion practice. Neither one of us wants to be spending any more time on these matters than we need to. We intend to file such a motion, the offer to join it still stands.

Let me know if you have any questions.

I'll be unavailable until 4ish EST, but available by cell (617-620-4762) after then. Or anytime tomorrow.

J


Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

BOOTH SWEET LLP

From: **Matthew Swanson** mswanson@fssklaw.com 
Subject: RE: Trustee Objections in Hansmeier
Date: November 18, 2016 at 12:49 PM
To: jsweet@boothsweet.com

Jason:

Chowdhury Matter –

It is clear we are not seeing eye to eye on this matter, so we will push forward.  Will you agree to accept service of a Complaint on behalf of Chowdhury?  If not, can you provide me with his current address?

Claim Objection –

I am not disputing that you may be able to establish liability against the Debtor, however, the existing orders stating that the Debtor is not liable need to be taken care of, and I believe the best way to do that is through a stay relief motion, which would allow you to pursue liability in the courts where the action is pending.  I doubt the bky court will want to establish liability, but you can file a motion if you'd like.  My interest is to keep things moving.

Thanks.

Matt S.

Matthew D. Swanson, Attorney
Fuller, Seaver, Swanson & Kelsch, P.A.
12400 Portland Ave. S., Suite 132
Burnsville, MN 55337
mswanson@fssklaw.com
(952) 890-0888 (phone)
(612) 719-1700 (cell)
(952) 890-0244 (fax)





**From:** jsweet@boothsweet.com
**Subject:** Re: Trustee Objections in Hansmeier
**Date:** November 18, 2016 at 1:06 PM
**To:** Matthew Swanson  mswanson@fssklaw.com

Matt

Chowdhury - I'm not sure what the issue here even is. There's a valid order against Hansmeier's alter-ego still in effect. Even if we had to go back to MA for further proceedings, alter-ego liability is procedural, not substantive. There is no new proceeding involved. Most importantly, you haven't provided any law to indicate otherwise or explained why the cases I've provided wouldn't apply.

I don't have Chowdhury's current address, just his email address which I haven't used in awhile. I'll have to try that before I can tell you about service.

Claim objection - I think you're misreading the order. The issue of Hansmeier's liability was never reached.

I've spoken with Erin and Paul Godfread who have agreed to join the motion I proposed. It is the quickest and easiest way to resolve the issue.

J

From: **Matthew Swanson** mswanson@fssklaw.com
Subject: RE: Trustee Objections in Hansmeier
Date: November 18, 2016 at 1:45 PM
To: jsweet@boothsweet.com

Jason:

On Chowdhury, the issue is that the vacating of the order nullifies the judgment lien.  You may have a claim against Hansmeier, but the lien is not valid.  You wouldn't be able to memorialize a judgment against Hansmeier's torrens property with a judgment against a related entity.

In regards to the Claim Objections, I agree with you that the courts didn't determine the issue of liability due to the service issues, and if service can be established (after stay relief is granted) the courts may very well find Hansmeier liable.

Matt S.

From: jsweet@boothsweet.com 
Subject: Hansmeier: creditors owed
Date: November 28, 2016 at 4:06 PM
To: Matthew Swanson mswanson@fssklaw.com

Matt

We're in the process of drafting several pleadings in response to the Trustee's objections to Claims Nos. 8, 9, 10, 11, 15, 16 and 18, as well as the adversary proceeding against Chowdhury.

I'm trying to ascertain the outstanding balance due the creditors.

**The following claims have been satisfied or are being withdrawn:**

Claim No. 2 (TCF) was satisfied via the sale of the condo.
Claim No. 8 (Smith) is being withdrawn as satisfied via a bond.
Claim Nos. 9, 10, and 11 (Godfread and Cooper) are being withdrawn.
Claim No. 12/19 (John Doe) has been satisfied via a bond.

**In dispute:**

Claim No. 3 (Chowdhury):              71,620.90 is in dispute.

**Remaining creditors:**

Claim No. 1 (AmEx):                   5,175.49
Claim No. 4 (Best & Flanagan):        26,189.91
Claim No. 5 (Godfread Law):           4,873.50
Claim No. 6 (Thompson):               13,547.88
Claim No. 7 (Gainsley):               7,005.76
Claim No. 13 (MN DoR):                750.96
Claim No. 14 (MN DoR):                750.96
Claim No. 15/16 (Godfread and Cooper): 679,651.65
Claim No. 17 (Does):                  91,573.17
Claim No. 18 (Cooper):                255,000.00
                                      ─────────────
                                      1,084,519.28

Is the above correct?

Thanks,
J

Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

**BOOTH SWEET LLP**

From: **Matthew Swanson** mswanson@fssklaw.com 
Subject: RE: Hansmeier: creditors owed
Date: November 28, 2016 at 4:12 PM
To: jsweet@boothsweet.com

Jason:

In general I think your analysis is correct, although I have not confirmed the dollar amounts. Claims 13 and 14 appear to be duplicates, so only one will be allowed, and you are aware of the outstanding objections.

Matt S.

Matthew D. Swanson, Attorney
Fuller, Seaver, Swanson & Kelsch, P.A.
12400 Portland Ave. S., Suite 132
Burnsville, MN 55337
mswanson@fssklaw.com
(952) 890-0888 (phone)
(612) 719-1700 (cell)
(952) 890-0244 (fax)



**From:** jsweet@boothsweet.com 
**Subject:** Hansmeier filings
**Date:** December 16, 2016 at 3:06 PM
**To:** Matthew Swanson mswanson@fssklaw.com

Matt

Don't know if you saw this: http://www.startribune.com/feds-charge-porn-troll-lawyers-in-major-fraud-extortion-case-in-minneapolis/407095106/

I attached the indictment below.

I'm going to be filing several motions today and didn't know if you wanted to join or consent to any of them before I did.

1. Joint Motion for Findings of Fact Regarding the Alter Ego Status of the Debtor.
We're asking the court told Hansmeier liable for any judgments in the name of his alter egos. If the court agrees, it should obviate the adversary proceeding, objections, and any requests for stay relief. Paul Godfread and Erin Russell are joining the motion and Ted Sheu has consented to it.

2. Motion to Stay the Adversary Proceeding (or in the alternative for relief from stay)

3. Motion to Stay Determination of the Objections (or in the alternative for relief from stay)
Paul Godfread is joining this motion.

Let me know your thoughts.

J



hansmeiersteeleindictme
nt12_14_16.pdf

Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

**BOOTH SWEET LLP**

From: **Matthew Swanson** mswanson@fssklaw.com
Subject: RE: Conference call
Date: December 24, 2016 at 11:43 AM
To: Erin Russell erin@russellfirmchicago.com, jsweet@boothsweet.com



I am out of town on vacation all next week, so I am unsure of availability.  If you want to email me a settlement proposal I will review and get back to you.

Matt S.


Sent from my Verizon 4G LTE smartphone


-------- Original message --------
From: Erin Russell <erin@russellfirmchicago.com>
Date: 12/23/16 2:31 PM (GMT-06:00)
To: jsweet@boothsweet.com
Cc: Matthew Swanson <mswanson@fssklaw.com>
Subject: Re: Conference call

Tuesday is better for me, guys.

Thanks! Have a great holiday

Erin

Sent from my iPhone

On Dec 23, 2016, at 2:23 PM, "jsweet@boothsweet.com" <jsweet@boothsweet.com> wrote:

> we want to make sure we're all on the same page when an agreement is struck.
>
> J
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> **From:** "jsweet@boothsweet.com" <jsweet@boothsweet.com>
> **Date:** December 23, 2016 at 3:21:29 PM EST
> **To:** Matthew Swanson <mswanson@fssklaw.com>, Erin Russell <erin@russellfirmchicago.com>
> **Subject: Conference call**
>
> Matt
>
> What's your availability next week for a conference call? (Preferably Monday or Tuesday). I spoke with Erin today, and I think a lot is getting lost in translation when we talk via email. Erin and I think we could wrap up the Hansmeier litigation, but
>
>
> Sent from my iPhone

From: jsweet@boothsweet.com 🖉
Subject: Hansmeier
Date: January 3, 2017 at 3:48 PM
To: Matthew Swanson  mswanson@fssklaw.com

Matt

Please review the enclosed letter. I'm available tomorrow until 2 to talk.

J



1-3 Settlement Ltr.pdf


Jason Sweet
Booth Sweet LLP
32R Essex Street
Cambridge, MA 02139
T: (617) 250-8619
F: (617) 250-8883
www.boothsweet.com
www.facebook.com/BoothSweet

This e-mail is from the law firm Booth Sweet LLP, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments.

BOOTH SWEET LLP

# BOOTH SWEET LLP

32R Essex Street  Cambridge, MA 02139
T: 617.250.8602 | F: 617.250.8883 | www.boothsweet.com

**RULE 408 SETTLEMENT CORRESPONDENCE**

January 3, 2017

Matthew Swanson
Fuller, Seaver, Swanson & Kelsch, P.A.
Portland Corporate Center
12400 Portland Avenue South, Suite 132
Burnsville, MN 55337

RE:     Paul Hansmeier/BKY 15-42460
        AF Holdings, LLC v. Chowdhury/12-cv-12105-IT

Matt:

I'll be honest, as a civil litigator some of bankruptcy procedure is lost on me (i.e., every motion gets a hearing). But, I'm hoping we can settle all of this without any further court intervention. With regards to the adversary proceeding, I thought it best to first to lay out the factual record in greater detail.

**I.   Factual record as it pertains to Chowdhury.**

1.  On November 13, 2012, the Debtor, thru his alter-egos AF Holdings, LLC and Prenda Law, Inc., filed suit against Chowdhury. *AF Holdings, LLC v. Chowdhury*, No. 12-cv-12105 (D.Mass 2012).

2.  On March 6, 2013, AF Holdings and Prenda Law were adjudicated pre-petition to be alter-egos of the Debtor. *Ingenuity 13 v. Doe,* 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. March 6, 2013); *aff'd Ingenuity 13 v. Doe,* 651 Fed. App'x. 716 (9th Cir. 2016). See Docs. 192-3 and 192-4, respectively. See also, Doc. 192-10, *Lightspeed Media v. Smith, et al*, 761 F.3d 699, 703 (7th Cir. 2014) (adopting the *Ingenuity 13* finding that the Debtor, Steele, and Duffy owned and controlled Prenda Law); Doc. 192-2, Stipulation for Discipline ¶ 4, *In re Paul Robert Hansmeier*, File No. A5-1885 (Minn. July 1, 2016); Doc. 192-1, Petition for Disciplinary Action ¶¶ 1-8, *id.* (Minn. Oct. 28, 2015). The Minnesota Supreme Court has entered a final order in the disciplinary action against Hansmeier based on the stipulation in which he admitted his controlling role in Prenda Law. Order, *id.* (Minn. Sept. 12, 2016). Doc. 184-7.

1

3.  On October 22, 2013, the District Court of Massachusetts entered an uncontested $64,180.80 default judgment jointly and severally against AF Holdings, LLC ("AF"), Prenda Law, the Debtor, John Steele and Paul Duffy.

4.  On December 3, 2013, the Debtor's motion to vacate the default judgment was denied. On December 16, 2013, the Debtor noticed his appeal from the default judgment. *Chowdhury*, ECF No. 45.

5.  On January 9, 2014, Chowdhury's motion for contempt and sanctions against the Debtor, which he opposed [*id.*, ECF No. 54], was denied without prejudice to being re-raised at the conclusion of the appeal.

6.  On February 3, 2014, the Debtor's associate, Steele, sought to stay the Chowdhury Judgment pending the appeal. *Chowdhury*, ECF Nos. 59 & 60. The same day, the Debtor opposed certification of the judgment for registration in other districts. *Id.*, ECF No. 61. On March 31, 2014, the District Court of Massachusetts denied the motion for stay and certified the Chowdhury Judgment.

7.  On October 17, 2014, the Chowdhury Judgment was attached as a lien to the Debtor's homestead in Minnesota. Exhibit 5.

8.  On July 13, 2015, the Debtor filed a voluntary Chapter 13 Petition. The Debtor's original schedules listed his interest in the Real Property and identified the Chowdhury Judgment as a disputed debt.

9.  On September 16, 2015, the Debtor listed for sale his condominium, a property of the bankruptcy estate, without notifying the Chapter 13 Trustee.

10. On September 22, 2015, the Debtor moved to avoid lien imposed by the Chowdhury Judgment. Doc. 23. On October 9, 2015, Chowdhury opposed the removal of the lien. Doc. 27.

11. On November 9, 2015, the Debtor accepted an offer to sell the property for $1,200,000.

12. On November 12, 2015, the United States Trustee moved to convert the bankruptcy case to Chapter 7 citing Debtor's concealment of the listing agreement and contract to sell the condominium. Doc. 32.

13. On November 23, 2015, the Debtor withdrew his motion to avoid the Chowdhury Judgment lien.

14. November 25, 2015 Debtor moved the Court to approve the sale of his condominium, property of the estate. Doc. 49.

15. On December 3, 2015, the Court entered an order approving the sale of Debtor's condominium, providing that proceeds "shall be used at closing only to satisfy the underlying first mortgage on the property, judgment lien, realtor fees, and all other usual and customary closing costs such as deed recording fees paid to the county." Doc. 59 ¶ 3. The same day, the case was converted to a case under Chapter 7 and authorized the Chapter 7 trustee to close on the sale of the property once appointed. *Id.* ¶ 4; Doc. 60. The Court's decision to convert was based on its findings that the bankruptcy hd been designed only to thwart the collection efforts of creditors, and that Debtor, post-petition, "filed misleading or false documents in this case and provided potentially false testimony at his Rule 2004 examination." Doc. 110 p. 9. Debtor appealed the conversion order and filed a motion to stay the case pending appeal, which the Court denied on February 3, 2016. *Id.* pg. 13.

16. On December 15, 2015, the condominium was sold subject to Chowdhury's judgment lien with the Court's authorization. Doc. 59 ¶ 3. The judgment in favor of Chowdhury, plus applicable interest, was included among the closing costs of the sale. *See* Doc. 113 pgs. 4 & 12, Doc. 166 pg. 1.

17. The closing statement for the sale shows the $1,200,000 sale price, and provided for the satisfaction of Chowdhury's lien with $71,620.90 from those proceeds. Doc. 120 pg. 4 ("Judgment payoff to Best & Flanagan LLP Trust Account ref. Chowdhury").

18. Despite the Trustee's knowledge of the appeal, the creditor's lien was not challenged. Rather, the Trustee approved the terms of the sale, including the judgment payoff—without condition (i.e. funds held in a constructive trust until a determination; bond requirement; etc.). *See id.* ("Randall Seaver Bankruptcy Trustee- READ and Approved").

19. **The Trustee had ample opportunity to evaluate the estate's interest, if any, in the litigation, found none and signed off on the satisfaction of the judgment.**

20. The Trustee moved for approval of a settlement and payment. Doc. 125. The Court granted the motion on April 13, 2016. Doc. 132.

21. On August 4, 2016, the First Circuit vacated the judgment as to the Debtor, John Steele and Paul Duffy, and remanded the matter on a procedural issue—which the automatic stay prevents

resolution and relief to which the Trustee will not assent. The judgment against AF Holdings and Prenda Law still stands.

22. The Trustee opened an adversary proceeding against Chowdhury on November 18, 2016, seeking to to avoid and recover the payment made to Chowdhury from the proceeds of the sale of Debtor's condominium. Doc. 180.

_____

**II.  Section 546 and Rule 7025 allow Chowdhury to perfect the lien and have it relate back.**

23. The Trustee commenced suit against Chowdhury seeking relief under two theories of recovery.

24. In Count I, the Trustee "seeks a restitution judgment against the Defendant for the return of the monies paid in satisfaction of the Chowdhury Judgment." The Trustee contends satisfaction of the judgment is avoidable because the 'Chowdhury Judgment was vacated as to the Debtor, entitling the Estate to the return of the monies paid.' To effectuate the avoidance, the Trustee requests a money judgment against the Defendants in the amount of $71,620.90 "along with costs and interest."

25. In doing so, the Trustee neglects that a controlling debtor's alter-ego liability attaches at the moment in time in which the factual elements, as dictated by law, have materialized. So long as AF, Prenda and Hansmeier are alter-egos of each other, any judgments against AF or Prenda attach to Hansmeier. See e.g. *Allstate Financial Corp. v. United States*, 109 F.3d 1331 (8th Cir. 1997); *id.* at 1335 (wherein the court granted priority to Allstate's security interest over IRS tax levies, despite the fact that Allstate's financing statement failed to identify the alter ego).

26. Again, beginning on March 6, 2013, the Debtor, AF Holdings and Prenda Law were adjudicated repeatedly—and pre-petition—to be alter-egos of one another in *Ingenuity 13 v. Doe*. A fact known to all creditors and the Trustee.[1]

27. In Count II, the Trustee, in the alternative, argues such restitution is proper because the Defendants were unjustly enriched. Specifically, the Trustee alleges the Defendants received preferential status in relation to all other general unsecured creditors via an "improperly

_____

[1] Is there a reason why you represented to the Court "Counsel is unaware of a finding that has specifically stated that Prenda Law is the alter ego of the Debtor" [Doc. 194, pg. 2 (filed Dec. 20)] when I had emailed you as recently as November 16 the cites to cases finding that exact issue?

obtained" judgment and lien.[2] The Trustee contends satisfaction of the judgment is avoidable because the "vacating of the Chowdhury Judgment retroactively removes Chowdhury's judgment lien." To effectuate the avoidance, the Trustee requests a money judgment against the Defendants in the amount of $71,620.90.

28. This is the Trustee's real argument ("vacating of the Chowdhury Judgment retroactively removes Chowdhury's judgment lien."). One for which it has provided no legal support for, despite repeated requests.

29. Section 546(b) states that the rights and powers of a trustee under §§ 544, 545 and 549 of the Bankruptcy Code are subject to any generally applicable law that (1) "permits perfection of an interest in property to be effective against an entity that acquires rights in [the] property before the date of perfection," or (2) "provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in [the] property before the date on which action is taken to effect[] maintenance or continuation." 11 U.S.C. § 546(b)(l). An interest in property is perfected, or perfection is maintained or continued, by giving notice within the period prescribed by applicable law if (1) that law "requires seizure of the property or commencement of an action to accomplish perfection, or maintenance or continuation of perfection of an interest in the property," and (2) the "property has not been seized or [the] action has not been commenced before the filing" of the bankruptcy case. 11 U.S.C. § 546(b)(2).

30. The unambiguous language of section 546(b)(1)(A) does not require that applicable law contain language providing that perfection, or maintenance or continuation of perfection, of an interest in property relates back in time to be superior in priority to the interest of any entity acquiring rights in the property before the date of perfection or the date on which action is taken to effect maintenance or continuation of perfection in the property.

31. Other than as may be set forth under applicable non-bankruptcy law, there is no time limit for perfection under section 546(b)(1).

32. Chowdhury is moving to substitute Hansmeier as a counterdefendant pursuant to Rule 25(c)/ Fed.R.Bankr.P. 7025. Under the applicable rule of civil procedure, if granted, Hansmeier's substitution relates back to the judgment against AF. The Trustee has acknowledged in emails that Chowdhury will be able to substitute the Debtor.

---

[2] At the time of the bankruptcy, Chowdhury held a "properly obtained" judgment, certified by the District Court of Massachusetts, then domesticated in Minnesota and placed as a "properly obtained" lien on Hansmeier's property.

33. This procedural substitution does not require a new proceeding. "The rule is 'designed to allow an action to continue unabated when an interest in a lawsuit changes hands,' rather than requiring the initiation of an entirely new lawsuit." *ELCA Enters. v. Sisco Equip. Rental & Sales*, 53 F.3d 186, 191 (8th Cir. 1995) (quoting *General Battery Corp. v. Globe-Union, Inc.*, 100 F.R.D. 258, 261 (D. Del. 1982)). Parties may be added or substituted under Rule 25(c) even after a default judgment. *United States v. Aiken*, 867 F.2d 965, 967 (6th Cir. 1989) (affirming substitution); *3M*, 757 F.2d at 1258-59 (affirming addition of "successors in interest and alter egos" of company subject to default judgment).

_____

III. **Immediate restitution from Chowdhury is inappropriate.**

34. When a judgment is reversed or vacated, restitution is warranted only where retention of the benefit would be inequitable. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 877 (1st Cir. 1995) (citing Restatement of Restitution § 74 (1937) cmt. c); *Mohamed v. UNUM Life Ins. Co.*, 129 F.3d 478, 480 (8th Cir. 1997). The burden is on the claimant seeking restitution to "show that the money was received in such circumstances that the possessor will give offense to equity and good conscience if permitted to retain it." *Atlantic C.L.R. Co. v. Florida*, 295 U.S. 301, 309 (1935). As Justice Cardozo put it: "The question no longer is whether the law would put him in possession of the money if the transaction were a new one. The question is whether the law will take it out of his possession after he has been able to collect it. " *Id*. at 310.

35. Neither AF nor Prenda appealed from the judgment against it, and AF is merely one of the empty shell companies that the Debtor employed in spurious litigation against Chowdhury and others. *See Ingenuity 13 LLC v. Doe*, 2013 U.S. Dist. LEXIS 64564, *3, 5-6 (C.D. Cal. May 6, 2013). It would therefore be inequitable for the Debtor or his estate to recapture funds that he paid to cover AF's liability, and his liability for AF's actions on his behalf. As an alter ego of AF Holdings, he can be held liable for the judgment against it upon proper service. *See Minnesota Mining & Mfg. Co. c. Eco Chem, Inc.*, 757 F.2d 1256, 1632-64 (Fed. Cir. 1985) ("The precedents establish that a court which has jurisdiction over a corporation has jurisdiction over its alter egos.") (citing *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Mgmt., Inc.*, 519 F.2d 634 (8th Cir. 1975)).

36. "Ordering avoidance and recovery of an unauthorized post-petition transfer to a secured creditor is futile, and of no benefit to the bankruptcy estate since the creditor's lien would be revived by the avoidance; under these circumstances pursuing the secured creditor is pointless because the secured creditor would simply pay money over to the bankruptcy estate or trustee who, in turn, would then be required to return to the secured creditor the value of the secured claim." *Collier on Bankruptcy.*

---

### IV. The Trustee is precluded from denying alter ego liability attaches to Hansmeier.

37. On October 25, counsel received an email from Ted Sheu stating "I just called [Swanson] too and he said Hansmeier is mostly the one pushing for [the adversary proceeding]." The same representation was made to counsel when he spoke with the Trustee.

38. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 881 (2008) (citing *Semtex Int'l Inc. v. Lockheed Martin Corp.*, 521 U.S. 497, 507-08 (2001)). "[P]reclusion is appropriate when a nonparty later brings suit as an agent for a party who is bound by a judgment." *Id.* (citing 18A Wright & Miller § 4449, p. 335) "A party may not use a representative or agent to relitigate an adverse judgment." *Id.* The Trustee, in initiating an adversary proceeding against Chowdhury, is acting as the Debtor's undisclosed agent, making preclusion appropriate. *Brown v. Manty (In re Brown)*, 427 B.R. 715, 721-22 (D. Minn. 2010) (*quoting Sells v. Porter*, 539 F.3d 889, 894 (8th Cir. 2008)).

---

### V. The estate is underfunded.

39. I spoke with Erin on Christmas Day. She said she asked you how much money was left in the estate; that you responded around $100k; and that your firm's billables were almost that much. Neither we nor the other creditors had any idea the estate's funds were so limited in light of how many millions Hansmeier took in over the years. In fact, we're a bit surprised that's the case.

40. Remaining creditors:

|  |  |
|---|---|
| Claim No. 1 (AmEx): | 5,175.49 |
| Claim No. 4 (Best & Flanagan): | 26,189.91 |
| Claim No. 5 (Godfread Law): | 4,873.50 |
| Claim No. 6 (Thompson): | 13,547.88 |
| Claim No. 7 (Gainsley): | 7,005.76 |

| | |
|---|---|
| Claim No. 13 (MN DoR): | 750.96 |
| Claim No. 17 (Does): | 91,573.17 |

**Total: $149,166.67**

41. Right now the remaining creditors are owed a total of $149,166.67. This doesn't include the $100k+ currently owed your firm nor does it include the costs of the litigation you initiated or the continuing costs of managing the estate. Frankly, if the concern is to avoid incurring additional costs to the estate and your firm, why continue to litigate? The recoverable funds, if they are even recoverable, still fall short of satisfaction. And our previous filings demonstrate we have the support of the unsecured creditors in our motions.

_____

## VI. Godfread & Cooper.

42. On a related note, Cooper and Godfread's claims have now been dismissed. The Trustee filed his claim objections on November 16, 2016. In support, the Trustee made some dubious claims, namely:

 A. "Claimants chose not to file a new stay relief motion, even after the Trustee filed his motion objecting to the proof of claims."

43. In doing so, you neglect to mention that same day you filed your objections without warning, we were discussing issue. In fact, you didn't respond to my email on the issue until November 18 which was the same day you emailed another creditor that "as of next week [you]'d be objecting to anything for which a motion hadn't been filed." Was there a reason we weren't afforded the same head's up? To the extent our filing to stay was insufficient, again, we're not bankruptcy attorneys.

 B. "[P]oints out that the motions are in essence admissions that Claimants' proof of claims are currently deficient."

44. Really?

45. Coincidently, Cooper and Godfread were the two unsecured creditors we represented. So now, you're demanding immediate restitution and you've negated any hope we may have had—if restitution were appropriate—that we would get some of that money back via the unsecured claims. To be clear, a lot of the funds at issue for our clients are due us as fees and costs. We represented these people for no money upfront because it was the only way to combat was

Hansmeier and his associates were doing. And we were proven right as the courts have repeatedly shown. Our firm has represented over 100 victims of Hansmeier's schemes. We've been fighting them since 2010. And now we and the three clients we've been able to recover for are being asked to return that money because of pressure on you from Hansmeier for a procedural flaw that can be cured. I hope you can understand why we will fight this; how invested we are already; our established tenacity to go the distance; and how little money we have.

_____

46. Let me ask you this:

   1) Can Godfread & Cooper's (or any creditor's) denied claims now be pursued in district courts without violating the automatic stay?

   2) If as the adversary complaint alleges, the restitution sought is for the benefit of the unsecured creditors: How much of that money actually goes to the unsecured creditors and how much to your firm?

   3) In light of § 546, Rule 7025, and issue preclusion is there a reason the adversary proceeding is worth pursuing?

47. Neither one of us wants to keep flogging this dead horse. All we're doing is playing into Hansmeier's hands—going in circles, wasting time and money fighting one another.

48. If you're telling us we can pursue the Cooper & Godfread claims in district courts—we're willing to drop reconsideration of the issue.

49. If you can explain why any of the defenses above would not apply in Chowdhury, all we ask is you either drop the adversary proceeding or assent to relief from the stay—whichever you're comfortable with. Otherwise, we will continue to fight this issue. Especially since you've made it our only hope of recovery now.

50. I understand from your conversation with Erin that the court may require us to file our alter-ego motion as an adversary proceeding—we are willing to do so and have the support of the unsecured creditors.

51. If the unsecured creditors sign off on dropping the Chowdhury matter, will that help?

A lot of this are facts, arguments and offers here we've presented before. I understand not wanting to join the alter ego motion, but you were noncommittal assenting to the reliefs from stay—then in the Cooper objections fault us for not filing for a stay. Nor have you provided any sort of rebuttal supported by law that would show you're entitled to restitution. And it seems that

information isn't being equally distributed to the creditors and assumptions and representations are being made without support.

I'm not trying to be intractable, but hopefully you can understand our position. I just don't see an upside for either of us in continuing this. I never have.

Regards,

Jason

From: **Matthew Swanson** mswanson@fssklaw.com
Subject: Re: Hansmeier
Date: January 4, 2017 at 11:15 AM
To: jsweet@boothsweet.com



Jason:

Thank you for your letter.   As you state, we have discussed these issues through multiple correspondences over the last months, and to date your only settlement proposal is for the bankruptcy estate to release the restitution claim against Chowdhury and your firm.  That is not a reasonable settlement offer.  I have explained the basis for the adversary action, and clearly we do not agree on the application of the law.

At this point, the Cooper and Godfread claims have been denied, by the court, wherein the court noted that the record was void of any evidence of Hansmeier's liability on the claims.  I recommend that you review the audio from the hearing.  The only issue, between us, is the Chowdhury adversary, which pursuant to your January 3, 2017 settlement letter, we are not moving forward with any meaningful settlement negotiation.

Thank you.

Matt Swanson


-------- Original message --------
From: jsweet@boothsweet.com
Date: 1/3/17 3:48 PM (GMT-05:00)
To: Matthew Swanson <mswanson@fssklaw.com>
Subject: Hansmeier

**From:** jsweet@boothsweet.com  📎
**Subject:** Re: Hansmeier
**Date:** January 4, 2017 at 2:06 PM
**To:** Matthew Swanson  mswanson@fsslaw.com
**Cc:** Erin Russell  erin@russellfirmchicago.com,  Edward P. Sheu  esheu@bestlaw.com,  Paul Godfread  paul@godfreadlaw.com

Matt

What application of the law? You've provided none to support your position and have only rejected our arguments out of hand and without offering any support. I need more than "cause I said so" to work with here.

You call Erin to have her talk to me. (I don't why you didn't just call me.) I draft a 10 pg letter to you outlining our position, the law and asking you several questions—which you haven't responded to—all in an effort to find some sort of a resolution. And this is your response.

"to date your only settlement proposal is for the bankruptcy estate to release the restitution claim against Chowdhury and your firm"

No, we asked if you wanted to join the alter-ego motion—you rejected. We asked several times if you would assent to a motion for relief from the stay—you were non-committal.

"I have explained the basis for the adversary action"

No, you explained your basis for the adversary action—absent any legal support.

One of the reasons I'm cc'ing Erin and Ted here is because you told Erin the estate contains about $100k and that your firm's billables are almost that much. Right now the remaining creditors are owed a total of $149,166.67. This doesn't include the $100k+ currently owed your firm nor does it include the costs of the litigation you initiated or the continuing costs of managing the estate. If as the adversary complaint alleges, the restitution sought is for the benefit of the unsecured creditors: How much of that money actually goes to the unsecured creditors and how much to your firm?

The recoverable funds, if they are even recoverable, still fall short of satisfaction.

Jason

From: **Edward P. Sheu** esheu@bestlaw.com
Subject: RE: Hansmeier
Date: January 4, 2017 at 5:36 PM
To: jsweet@boothsweet.com, **Matthew Swanson** mswanson@fssklaw.com
Cc: Erin Russell erin@russellfirmchicago.com, Paul Godfread paul@godfreadlaw.com

Guys (and Erin),

It seems that with only a $100K potential recovery for all creditors and the trustee to share, we should try to work out a deal amongst ourselves (presumably subject to UST and court approval).

Can we set up a phone call maybe? I think the ones copied here are the only relevant people but I may be wrong.

Ted.

Edward "Ted" Sheu
Attorney
DIRECT 612.349.5656  V-CARD

**BEST & FLANAGAN LLP**
60 South Sixth Street, Suite 2700,  Minneapolis, Minnesota 55402
TEL 612.339.7121  FAX 612.339.5897  BESTLAW.COM

CONFIDENTIAL: This email may contain confidential and privileged information and is for the intended recipient only. If you are not the intended recipient, please refrain from reading and delete all copies of this email. IRS NOTICE: Any tax advice contained in this email and any attachment was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties that may be imposed under the tax laws, or (2) promoting or recommending any transaction.

From: **Matthew Swanson** mswanson@fssklaw.com
Subject: RE: Hansmeier
Date: January 4, 2017 at 10:53 PM
To: Edward P. Sheu esheu@bestlaw.com, jsweet@boothsweet.com
Cc: Erin Russell erin@russellfirmchicago.com, Paul Godfread paul@godfreadlaw.com

---

Counselors:

I am available to talk midday on thursday, 11-2pm.

Matt S.

Sent from my Verizon 4G LTE smartphone

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                                Chapter 7

PAUL HANSMEIER,                                       No. 15-42460

     Debtor.

---

PAUL HANSMEIER, Debtor,                               Adv. No. 16-04124

     Plaintiff

     v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

---

I hereby certify that on January 3, 2018, I caused the following documents:

1. Motion to Set Aside Entry of Default;
2. Memorandum in Support to Set Aside Entry of Default;
3. Declaration in Support to Set Aside Entry of Default;
4. Declaration Exhibits; and
5. Proposed Order.

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).

I further certify that I caused copy of the foregoing documents to be mailed by first class mail to the entities and individuals listed below:

Paul Hansmeier
3749 Sunbury Alcove
Woodbury, MN 55125

Dated: January 3, 2018

Respectfully,

s/ Jason E. Sweet
_____
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                              Chapter 7

PAUL HANSMEIER,                                     No. 15-42460

     Debtor.

---

PAUL HANSMEIER, Debtor,                             Adv. No. 16-04124

     Plaintiff

     v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

---

### ORDER GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT

---

     This case is before the Court on a motion by the Defendants for an order to set aside the entry of default. Based on the record, the Court determines that Defendants' motion is appropriate. Accordingly, IT IS HEREBY ORDERED that the Defendants' motion to to set aside the January 10, 2017 entry of default is granted.

Dated:

                                    _____
                                      Kathleen H. Sanberg
                                      Chief United States Bankruptcy Judge