## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                          Chapter 7

PAUL HANSMEIER,                                 No. 15-42460

    Debtor.

---

PAUL HANSMEIER, Debtor,                         Adv. No. 16-04124

    Plaintiff

    v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

    Defendants.

---

### DEFENDANTS' MOTION MOTION TO DISMISS
### PURSUANT TO Fed. R. Bankr. P. 7012(b)(1) and (b)(6)

---

TO: The Debtor and all parties in interest specified in Local Rule 9013-3.

1. Defendants Sandipan Chowdhury and Booth Sweet LLP (collectively "Defendants") respectfully move the Court for the relief requested below and give notice of hearing.

2. The Court will hold a hearing on this motion on 10:30 a.m. on January 17, 2018 in Courtroom 8 West, U.S. Bankruptcy Court, 300 South Fourth Street, Minneapolis, MN 55415.

3. Any response to this motion must be filed and served by delivery not later than January 12, 2018, which is five days before the time set for the hearing. UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This bankruptcy case was commenced under Chapter 13 on July 13, 2015. It was converted to a case under Chapter 7 on December 3, 2015. Discharge was waived on January 3, 2018.

5. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bank. P. 5005, and Local Rule 1070-1.

6. Through this motion, Defendants hereby move for an Order pursuant to Fed. R. Bank. P. 7012(b)
(1) and (b)(6), 9023 and 9024 and Fed. R. Civ. P. 12(b)(1) and (b)(6) dismissing the claims
against them with prejudice

7. The basis for this motion are set forth in the accompanying memorandum of law.

WHEREFORE, Defendants request entry of an order dismissing the claims against them with
prejudice

Dated: January 3, 2018

Respectfully,

s/ Jason E. Sweet

Jason E. Sweet
BOOTH SWEET LLP
Jason E. Sweet (BBO# 668596)
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

*Counsel for Defendants*
*Pro Hac Vice Appearance*

## VERIFICATION

I, Jason Sweet, counsel for Defendants Sandipan Chowdhury and Booth Sweet LLP, certify
under penalty of perjury that I have read the Motion, and the accompanying Memorandum in Support
of the Motion, and the factual information contained therein is true and correct to the best of my
knowledge, information and belief.

s/ Jason E. Sweet

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In re:                                            Chapter 7

PAUL HANSMEIER,                                   No. 15-42460

     Debtor.

_____

PAUL HANSMEIER, Debtor,                           Adv. No. 16-04124

     Plaintiff

     v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

_____

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
### PURSUANT TO Fed. R. Bankr. P. 7012(b)(1) and (b)(6)

_____

### FACTS

1. On November 13, 2012, the Debtor, Paul Hansmeier ("Debtor"), filed suit against Sandipan Chowdhury ("Chowdhury") in the District Court of Massachusetts. *AF Holdings, LLC v. Chowdhury*, No. 12-cv-12105 (D. Mass.) (hereinafter "*AF Holdings*").[1]

2. Chowdhury answered with counterclaims against the Debtor on January 4, 2013. *AF Holdings,* ECF No. 7.

3. The District Court of Massachusetts entered a default judgment on Chowdhury's counterclaims jointly and severally against AF Holdings, LLC, Prenda Law, the Debtor, John Steele and Paul Duffy on October 22, 2013. *AF Holdings,* ECF No. 33.

_____

[1] On May 6, 2013, the Debtor, John Steele and Paul Duffy (collectively, "Principals") were found to be the real parties in interest for claims brought by AF Holdings and Ingenuity 13. The Principals were held to be jointly and severally liable for the acts of one another, Prenda Law, AF Holdings, and Ingenuity 13. *Ingenuity 13 LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. 2013).

4.  On December 3, 2013, the Debtor's motion to vacate the default judgment was denied. The Debtor noticed his appeal from the judgment against him on December 16, 2013. *AF Holdings*, ECF No. 45.

5.  On February 3, 2014, the Debtor opposed certification of the judgment for registration in other districts. *AF Holdings*, ECF No. 61. On March 31, 2014, the District Court of Massachusetts denied the motion. *Id.*, Doc. 66.

6.  The District Court of Massachusetts certified the judgment for registration in other districts [*AF Holdings*, ECF No. 67], and on October 17, 2014, the *AF Holdings* judgment was registered as a lien on the Debtor's homestead in Minnesota.

7.  On July 13, 2015, the Debtor filed a voluntary Chapter 13 Petition. *In re Hansmeier*, No. 15-bk-42460 (Bankr. D. Minn.) (hereinafter "*Hansmeier*"). The Debtor's original schedules listed his interest in the Real Property and identified the *AF Holdings* judgment as a disputed debt under appeal. *Id.*, Doc. 1 at 17.

8.  On September 16, 2015, the Debtor listed for sale his homestead, a property of the bankruptcy estate, without notifying the Chapter 13 Trustee, the U.S. Trustee, or the bankruptcy court. *Hansmeier*, Doc. 126 at ¶ 24.

9.  On September 22, 2015, the Debtor moved to avoid the lien imposed by the *AF Holdings* judgment. *Hansmeier*, Doc. 23. Defendants opposed [*id.*, Doc. 27], and the Debtor later withdrew the motion on November 23, 2015 [*id.*, Doc. 46].

10. The Debtor entered into a purchase agreement to sell his homestead on November 9, 2015, again without notifying the Chapter 13 Trustee, the U.S. Trustee, or the bankruptcy court. *Hansmeier*, Doc. 31. Only after the Court was made aware of the sale did the Debtor move for approval on November 25, 2015. *Hansmeier*, Doc. 49.

11. On December 3, 2015, the Court, being properly apprised of the appeal and disputed debt entered an order approving the sale, providing that proceeds "shall be used at closing only to satisfy the underlying first mortgage on the property, judgment lien, realtor fees, and all other usual and

customary closing costs such as deed recording fees paid to the county." *Hansmeier*, Doc. 59 at ¶ 3.

12. That same day, the bankruptcy was converted to Chapter 7. *Hansmeier,* Doc. 60. The Court's decision to convert was based on its findings that the bankruptcy had been designed only to thwart the collection efforts of creditors, and that Debtor, post-petition, "filed misleading or false documents in this case and provided potentially false testimony at his Rule 2004 examination." *Id.*, Doc. 110 at 9. Debtor appealed the conversion order and filed a motion to stay the case pending appeal, which the Court denied on February 3, 2016. *Id.*, at 13.

13. The Trustee was appointed on December 4, 2015. *Hansmeier*, Doc. 62.

14. On December 15, 2015, the condominium was sold subject to Chowdhury's judgment lien with the Court's authorization. *Hansmeier*, Doc. 59 at ¶ 3. The judgment in favor of Chowdhury, plus applicable interest, was included among the closing costs of the sale. *Id.*, Doc. 113 at 4, 12; *id.*, Doc. 166 at 1. The closing statement for the sale shows the $1,200,000 sale price, and provided for the satisfaction of Chowdhury's lien with $71,620.90 from those proceeds. *Id.*, Doc. 120 at 4 ("Judgment payoff to Best & Flanagan LLP Trust Account ref. Chowdhury"). The Trustee approved the terms of the sale, including the judgment payoff—without condition. *Id.*, at 6 ("Randall Seaver Bankruptcy Trustee-READ and Approved"). The Trustee moved for, and was granted, approval of a settlement and payment. *Id.*, Docs. 120 and 132.

15. On August 4, 2016, the First Circuit vacated the judgment as to the Debtor, John Steele and Paul Duffy, and remanded the matter on a procedural issue—which the automatic stay prevents resolution thereof. *AF Holdings*, ECF No. 76. The judgment against AF Holdings and Prenda Law still stands. *Id*.

16. The Trustee commenced an adversary proceeding against Defendants on November 18, 2016. *Seaver v. Chowdhury et al*, No. 16-ap-04124 (Bankr. D. Minn.) (hereinafter "*Seaver*"). The complaint was premised upon the First Circuit judgment vacating the district court in *AF Holdings,* and sought to avoid and recover the settlement paid from the proceeds of the sale of Debtor's homestead. *Id.*, Doc. 1 at ¶¶ 33, 39.

17. On September 28, 2017, the Trustee presented five proposed settlements with the remaining creditors. *Hansmeier*, Doc. 225, 226, 227, 228 and 229.  Each creditor agreed to accept "20% of its filed claim, as full and final payment on its claim;" *Id.,* at ¶ 2(a). The Court granted the settlements on October 25, 2017. *Id.,* Doc. 232, 233, 234, 235 and 236.

18. On November 15, 2017, the Trustee proposed a settlement to the Court wherein control of the *Seaver* litigation would be transferred to the Debtor in exchange for a contingent security interest in any recoverable proceeds and the dismissal of Debtor's claims against the Trustee. *Hansmeier*, Doc. 247. The terms of the settlement were granted on December 6, 2017. *Id.*, Doc. 258.

19. On December 11, 2017, the Debtor filed to waive discharge. *Hansmeier*, Doc. 260. The waiver was granted on January 3, 2018. *Id.*, Doc. 262.

## LEGAL STANDARD

### I.   Standard of law under Fed. R. Bankr. P. 7012(b)(1).

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006). *See also Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1998); *see Bell v. Hood*, 327 U.S. 678, 682–683 (1946). Federal Rule of Civil Procedure 12(b)(l) provides that a claim must be dismissed if the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) applies to this adversary proceeding based on Federal Rule of Bankruptcy Procedure 7012(b). Fed. R. Bankr. P. 7012(b); *see also In re Valley Food Servs., LLC*, 400 B.R. 724, 726 n. 1 (Bankr. W.D. Mo. 2008).

Subject matter jurisdiction may not be waived. The court has the duty to determine its jurisdiction, and to raise the issue of subject matter jurisdiction *sua sponte*, if necessary. *See Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *City of Kansas City, Mo., v. Yarco Co., Inc.*, 625 F.3d 1038, 1040 (8th Cir. 2010); *In re May*, 251 B.R. 714, 719 (B.A.P. 8th Cir. 2000). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). *See also In re GuildMaster, Inc.*, 2013 Bankr. LEXIS 1241, *8 (Bankr. W.D. Mo. 2013).

Federal courts are courts of limited jurisdiction and that limited jurisdiction is conferred only by statute or by the United States Constitution. As a result of this statutory and Constitutional restraint on federal power, parties themselves cannot

confer subject matter jurisdiction, their consent to such jurisdiction is irrelevant, they cannot waive the requirement by failing to challenge jurisdiction.

*In re Fitzgeralds Gaming Corp.*, 261 B.R. 1, 5 (Bankr. W.D. Mo. 2001) (internal citations omitted).

"For the Court to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *In re Swenson*, 438 B.R. 195, 196 (Bankr. N.D. Iowa 2010) (*citing Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993)). If the complaint is challenged on its face, the factual claims concerning jurisdiction are presumed to be true. *Titus*, 4 F.3d at 593. The motion to dismiss will be successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Id.* Courts have the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Rule 12(b)(1). *In re Wayne Engineering Corp.*, 2008 Bankr. LEXIS 1069, *8 (Bankr. N.D. Iowa 2008) (*citing Deuser v. Vecera*, 139 F.3d 1190, 1192 n. 3 (8th Cir. 1998)); *see also Utiss v. CitiFinancial Mtg. Co.*, 2009 U.S. Dist. LEXIS 18892, *2–3 (E.D. Mo. 2009) ("Unlike analysis under Rule 12(b)(6), Rule 12(b)(1) allows the Court to consider matters outside of the pleadings.").

The plaintiff has the burden to prove jurisdiction exists. *In re Swenson*, 438 B.R. at 196 (*citing Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990)).

> [H]ere the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Utiss*, 2009 U.S. Dist. LEXIS 18892 at *3 (*quoting Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990)).

## II.  Standard of law under Fed. R. Bankr. P. 7012(b)(6).

Rule 12(b)(6) applies to this adversary proceeding based on Federal Rule of Bankruptcy Procedure 7012(b). Rule 12(b)(6) provides that a claim must be dismissed if it fails to plead facts sufficient to make out a plausible case for avoidance. *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In order to avoid dismissal pursuant to Rule 12(b)(6), a complaint must allege sufficient factual matter, which if accepted as true, would "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009) (*quoting Twombly*, 550 U.S. at 570). A statement is plausible if the

"factual content … allows the court to draw the reasonable inference that the defendant is liable for the [conduct] alleged." *Iqbal*, 556 U.S. at 663; *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). The court "may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record." *McAdams v. McCord*, 584 F.3d 1111, 1113 (8th Cir. 2009) (quoting *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002)).

However, this requirement must be read in light of Rule 9(b), made applicable by Fed. R. Bankr. P. 7009, which requires that claims of fraud or mistake be set forth with particularity. *Kelley v. BMO Harris Bank N.A.*, 2017 Bankr. LEXIS 535, *12 (Bankr. D. Minn. 2017); *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

## ARGUMENT

### I. The Court lacks subject matter jurisdiction over the proceeding as a matter of law.

Proceedings in a bankruptcy case are divided into two categories, core proceedings and non-core, related proceedings. *Specialty Mills, Inc. v. Citizens State Bank*, 51 F.3d 770 (8th Cir. 1995) (*quoting Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir. 1993)).

"Claims that "arise in" [or "arise under"] Title 11 are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *In re Farmland Industries, Inc.*, 567 F.3d 1010, 1018 (8th Cir. 2009). *See also In re AFY, Inc.*, 461 B.R. 541, 546 (B.A.P. 8th Cir. 2011); 28 U.S.C. § 1334(b). These causes of action are generally referred to as "core" proceedings. *See In re Am. Energy Trading*, 291 B.R. 159, 167 (Bankr. W.D. Mo. 2003); *Specialty Mills*, 51 F.3d at 773.

Non-core, "related to" proceedings, also referred to as "*Stern* claims", are "civil proceedings which do not invoke a substantive right created by bankruptcy but nonetheless fall within the jurisdiction of the bankruptcy court because they share a nexus with the bankruptcy case and will have some "conceivable effect" on the administration of the debtor's estate." *In re Williams*, 256 B.R. 885, 891 (B.A.P. 8th Cir. 2001) (citations omitted); *Stern v. Marshall*, 564 U.S. 462, 462–63, 476-77 (2011). A proceeding is "related to" if the outcome of that proceeding "could alter the debtor's rights, liabilities, options, or freedom of action … and which in any way impacts upon the handling and administration of the bankruptcy estate." *Cutcliff v. Reuter*, 791 F.3d 875 (8th Cir. 2015) (*quoting In re Dogpatch, U.S.A., Inc.*, 810 F.2d 782, 786 (8th Cir. 1987)).

Bankruptcy judges can hear and enter final orders in core matters. 28 U.S.C. § 157(b)(1). However, with respect to non-core matters, a bankruptcy judge may only "submit proposed findings

of fact and conclusions of law to the district court," with any final order or judgment entered by the district court, not the bankruptcy court. 28 U.S.C. § 157(c)(1). Only if all parties to a non-core proceeding consent, can the bankruptcy judge enter a final judgment in the non-core proceeding. 28 U.S.C. § 157(c)(2); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1936 (2015).

## A.   The Court is without jurisdiction as Debtor has an adequate remedy at law.

This is an action initially brought by the Chapter 7 Trustee, now assigned to the Debtor, suing in bankruptcy, to recover an alleged sum certain paid by the Debtor five months after the filing of his petition to the Defendant, one of his creditors, in extinguishment of a secured debt, and under circumstances alleged to constitute a fraudulent transfer within the meaning of the Bankruptcy Law. In such cases an action at law affords adequate remedy, and a court of equity is without jurisdiction.

Suits to recover fraudulent conveyances are actions at law if the plaintiff is attempting to recover 1) chattels/personal property, 2) cash/money judgments, or 3) land/real property. *Granfinanciera v. Nordberg*, 492 U.S. 33, 43–49 (1989); *see also Whitehead v. Shattuck*, 138 U.S. 146, 146, 150–51, 155–56 (1891); *In re Southeast Connectors*, 113 B.R. 85, 86–87 (S.D. Fla. 1990). Suits to recover fraudulent conveyances may be considered, in whole or in part, actions in equity if they 4) involve the recovery of intangibles (including causes of action) or 5) require an accounting. *Granfinanciera*, 492 U.S. at 44, 47 n. 6.

To determine whether a claim is a *Stern* claim, the court must look beyond whether the claim itself is designated as a "core" matter under § 157(b)(2) and instead determine "whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 498–99. Here, the fraudulent transfer claims asserted against the Defendants are *Stern* claims that fall beyond the adjudicatory power of the Bankruptcy Court. Even though the complaint's fraudulent transfer claims are designated "core" claims under the statute, *see* 28 U.S.C. § 157(b)(2)(H) (listing "proceedings to determine, avoid, or recover fraudulent conveyances"), the Supreme Court held many years ago that such claims do not stem from bankruptcy—they instead "are quintessentially suits at common law." *Granfinanciera*, 492 U.S. at 56; *see also Stern*, 564 U.S. at 492.[2] *Granfinanciera* explicitly rejected any attempt to recharacterize an action at law to recover money judgments as an equitable action seeking "avoidance" of fraudulent transfers and "restitution" of the funds transferred; the difference, being merely

---

[2] *Granfinanciera* discusses "actions to recover preferential or fraudulent transfers" together, 492 U.S. at 43, and the analysis is the same for both types of actions.

"semantic," does not alter the conclusion that an attempt to recover fungible monetary funds fraudulently conveyed is an action at law. *See id.* at 49 n. 7. *Cf. Seaver*, Doc. 14 at 10 ("The Plaintiff's Complaint presents a simple claim for restitution and an additional claim for unjust enrichment, both of which are based on the same facts.").

In this case, the avoidance of an allegedly fraudulent transfer is the final relief requested, and it involves only the recovery of one type of assets described above: money. *Seaver*, Doc. 1 at ¶ 30. As previously set forth, in such cases an action at law affords adequate remedy, and a court of equity is without jurisdiction. *Granfinanciera*, 492 U.S. at 53 (Congress therefore "may not assign" the adjudication of a fraudulent transfer claim "to a specialized non-Article III court lacking the essential attributes of the judicial power."); *see also Stern*, 564 U.S. at 492 n.7 ("Congress [can]not constitutionally assign resolution of [a] fraudulent conveyance action to a non-Article III court.").

**B.  Waiver of discharge results in the dismissal of related adversary proceedings.**

As a general rule, the dismissal or closure of a bankruptcy case results in the dismissal of related adversary proceedings. *In re Williams,* 256 B.R. at 892. *See also In re Davison, III,* 186 B.R. 741, 742 (Bankr. N.D. Fla. 1995) (finding an action for the recovery of a preference must be dismissed upon the dismissal of the underlying bankruptcy case).

Eighth Circuit law limits "related to" jurisdiction to whether a cause of action could conceivably affect the administration of the bankruptcy estate. *See In re Dogpatch,* 810 F.2d at 786; *Speciality Mills,* 51 F.3d at 774. While the Eighth Circuit as well as some courts within the Eighth Circuit have mentioned a "nexus" to the underlying bankruptcy case in determining whether subject matter jurisdiction exists, these courts went on to apply the test of whether there is also an effect on the estate. *See e.g., Id.,* at 774 ("For subject matter jurisdiction to exist in a 'related to' action, there must be some nexus between the civil proceeding and the Title 11 case. … We have stated that for courts to assert jurisdiction over a proceeding 'related to' a bankruptcy case, the proceeding must 'have some effect on the administration of the debtor's estate.'"). Further, courts within the Eighth Circuit have consistently held that common issues of fact and concerns regarding judicial economy are insufficient to bring a case within the bankruptcy court's subject matter jurisdiction. *See In re American Energy Trading, Inc.,* 291 B.R. at 168 ("[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]. Judicial economy does not justify federal

jurisdiction.'") (*quoting Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1985)). *See also In re Farmland Industries, Inc.,* 378 B.R. 829 (B.A.P. 8th Cir. 2007) (same).

The *McAlpin* case provides controlling precedent in this situation:

> We agree that the bankruptcy court did not have jurisdiction in the claim-objection proceeding under 28 U.S.C. §§ 157(b) or (c) (establishing core and non-core bankruptcy court jurisdiction), because (1) Mr. McAlpin's challenge to the propriety of the claimed collection costs came after his discharge, so the claim could no longer have been against the estate, and thus did not involve a right created by bankruptcy law or arising only in bankruptcy, *see Specialty Mills, Inc. v. Citizens State Bank,* 51 F.3d 770, 773 (8th Cir. 1995) (core proceedings); and (2) the claim-objection proceeding was not related to the bankruptcy, because at the time Mr. McAlpin objected to the claim there was no longer a plan to be confirmed, or an estate, and therefore the proceeding could not conceivably have affected his estate, *see id.* at 773–74 (non-core proceedings must have "conceivable effect" on administration of debtor's estate); *In re Fairfield Cmtys., Inc.,* 142 F.3d 1093, 1095 (8th Cir. 1998) (once bankruptcy debtor's reorganization plan has been confirmed, debtor's estate, and thus bankruptcy court's jurisdiction, ceases to exist; bankruptcy court is not meant to protect parties with regard to post-confirmation matters).

*In re McAlpin,* 278 F.3d 866, 868 (8th Cir. 2002). In *McAlpin,* the Eighth Circuit made clear that where there is no bankruptcy estate remaining, there can be no "related to" jurisdiction. *See also In re Valley Food Servs., Inc.,* 400 B.R. 724, 728 (Bankr. W.D. Mo. 2008) (if the resolution of the claim will not have any effect on the administration of the bankruptcy estate, it falls outside of the court's jurisdictional grant under 28 U.S.C. §§ 157(a) and 1334).

The outcome of the adversary proceeding, will impact neither the Debtor nor his estate. On December 11, 2017, the Debtor filed to waive discharge. *Hansmeier,* Doc. 260. That waiver was granted on January 3, 2018. *Id.,* Doc. 262. The effect of a waiver of discharge under 11 U.S.C. § 727(a)(10) is that the debtor shall be denied a discharge. *Smith v. Commissioner,* 96 T.C. 10, 16 (U.S. Tax Ct. 1991). By virtue of the Debtor's waiver of his right to a discharge, this Court is in no position to provide any material benefit to the Debtor. See *In re Marker Eighty, Inc.,* 69 B.R. 561, 566 (Bankr. M.D. Fla. 1987). The creditors have settled; the underlying bankruptcy proceeding has come to an end and the Debtor has no claim. In short, the Court no longer has jurisdiction over this proceeding; it has nothing to do with the Debtor, his Chapter 13 plan, or the administration of his Chapter 7 estate.

## II.  The Court is without jurisdiction over the claim for restitution.

### A.  The Debtor lacks standing to bring claims premised on the Trustee's avoidance powers.

"In order for a court to decide the merits of a particular dispute, a party must have standing." *In re Petters Co.*, 565 B.R. 154, 160 (Bankr. D. Minn. 2017). The direct limitation imposed by § 548, does not permit the Debtor—who has no fiduciary duty to the estate—to exercise the Trustee's avoidance powers. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989).

The Eighth Circuit has consistently followed this rule; that the statutory language of § 548 expressly confers avoidance powers *exclusively* on the trustee. *See In re Lauer*, 98 F.3d 378, 388 (8th Cir. 1996) ("Section 548 by its terms provides that certain transfers by the debtor prior to bankruptcy may be voided *only* by 'the trustee.'") (emphasis added); *Saline State Bank v. Mahloch*, 834 F.2d 690, 694 (8th Cir. 1987) (holding that "only the trustee or debtor in possession can invoke the avoidance powers. …"); *In re Minnesota Alpha Foundation*, 122 B.R. 89 (Bankr. D. Minn. 1990); *In re Auxano, Inc.*, 87 B.R. 72 (Bankr. W.D. Mo. 1988); *In re Wright*, 353 B.R. 627, 648 (Bankr. E.D. Ark. 2006). *See also In re Curry & Sorensen, Inc.*, 57 B.R. 824, 827 (B.A.P. 9th Cir. 1986) (holding that § 548 actions "may only be asserted by a trustee."). "Where Congress has promulgated specific rules about who can exercise avoidance powers and under what circumstances, it is not within the province of courts to confer those powers on others." *In re Shahid*, 2014 Bankr. LEXIS 5393, *14 (Bankr. E.D. Mo. June 24, 2014). *See also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989); *Patterson v. Shumate*, 504 U.S. 753 (1992). *See also In re Chapman Lumber Co.*, 343 B.R. 217, 220–21 (Bankr. N.D. Iowa 2006); *In re Pro Greens, Inc.*, 297 B.R. 850, 855–56 (Bankr. M.D. Fla. 2003); *Belding-Hall Mfg. Co. v. Mercer & Ferdon Lumber Co.*, 175 F. 335 (6th Cir. 1909) (under Bankruptcy Act, avoidance action was not assignable).

As the Debtor lacks standing to invoke the Trustee's avoidance powers, this Court is without jurisdiction as to Count I of the complaint. *Friedmann v. Sheldon Cmty. Sch. Dist.*, 995 F.2d 802, 804 (8th Cir. 1993).

**B.   11 U.S.C. § 548 only applies to transfers made on or prior to the date of the filing of the petition.**

Even if the Debtor could have standing to assert § 548 claims, the Court remains without jurisdiction. The language of the statute is clear: 11 U.S.C. § 548 only applies to transfers made on or prior to the date of the filing of the petition. As identified in the complaint, the transfer of funds occurred on December 15, 2015 [*Seaver*, Doc. 1 ¶¶ 17, 23, 30–33]—well after Debtor's Chapter 13 case was filed on July 13, 2015 [*Hansmeier*, Doc. 1] and after it was converted to Chapter 7 on December 3, 2015 [*Id.*, Doc. 60]. "Section 548 states the time period within which a transfer must

occur if it is to be avoided. That time period is prior to the filing of the petition." *In re Meltzer*, 90 B.R. 21, 25 (Bankr. D. Conn. 1988). As the Debtor can plead no set of facts which would allow the Court to grant him any relief under the statute, the claim under 11 U.S.C. § 548 should be dismissed.

### C. The Debtor cannot be assigned an abandoned claim.

If the Trustee truly has determined that further litigation of the avoidance claim is unwarranted and is worthless to the estate, then the Court should treat the transaction as a form of abandonment rather than a sale. *National American Insurance Co. v. Ruppert Landscape Co.*, 122 F. Supp. 2d 670 (E.D. Va. 2000). While perhaps not a true abandonment under § 554, the Trustee's proposal, taken with Court approval, will mean that no one acting on behalf of the estate would or could pursue the claim. *Id. Cf. Hansmeier,* Doc. 110 at 9 (The Court's decision to convert was based on its findings that the bankruptcy had been designed only to thwart the collection efforts of creditors, and that Debtor, post-petition, "filed misleading or false documents in this case and provided potentially false testimony at his Rule 2004 examination.").

### D. The Trustee has argued he lacked standing to file the complaint.

In related proceedings, the Trustee has argued that "Booth Sweet, LLP is not, and has never been, a creditor of the bankruptcy estate." *Chowdhury v. Seaver*, No. 17-ap-04125, Doc. 6 at 12 (Bankr. D. Minn.) (hereinafter "*Chowdhury*"). This is true. Similarly, he has stated that Chowdhury too was not a creditor of the bankruptcy estate because of the retroactive effect of the First Circuit's August 4, 2016 order. *Id. See also Hansmeier*, Doc. 248 at 10 ("Inherent in this Court's finding is that Chowdhury was not a creditor."). If neither Defendants were parties to the estate, then the Trustee never had standing to file the complaint. A statutory trustee in bankruptcy does not have authority to "assert general causes of action [against third parties] … on behalf of the bankrupt estate's creditors" under 11 U.S.C. § 544 or otherwise. *In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1228 (8th Cir. 1987) (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972)). Again, the complaint should be dismissed.

### III. The Court is without jurisdiction over the claim for unjust enrichment.

### A. The Court cannot enter a final judgment on non-core claims.

There can be no doubt that the claim for unjust enrichment constitutes a state law cause of action on which *Stern* prevents this Court from entering final judgment.[3] *Stern*, 564 U.S. at 468–71; *Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172–73 (2014). That was the precise legal issue considered in *Stern* and, as courts have recognized, the case "certainly reaffirms that only an Article III judge can enter a judgment associated with the estate's recovery of contract and tort claims designed to augment the estate." *In re Teleservices Grp., Inc.*, 456 B.R. 323 (Bankr. W.D. Mich. 2011). *See also In re Falzerano*, 686 F.3d 885, 888 (8th Cir. 2012) (bankruptcy court cannot enter judgment on unjust enrichment claim without identifying tangible property of the estate other than the alleged debt. This would require further analysis to be upheld under *Stern*; and claims for unjust enrichment based upon a debt owed are beyond the scope of § 542(a)).

Alternatively, even if the Debtor could bring an avoidance action under § 548: where state law claims are premised on the same facts as those needed to state a claim for fraudulent transfer under the Bankruptcy Code, such claims are barred. In other words, the state law unjust enrichment claim attempts to circumvent the protections of the Bankruptcy Code by seeking to void a transaction that is otherwise unavoidable under §544. *See In re Hechinger Inv. Co. of Del., Inc.,* 274 B.R. 71, 96–98 (Bankr. D. Del. 2002). *Cf. Seaver*, Doc. 14 at 10 ("The Plaintiff's Complaint presents a simple claim for restitution and an additional claim for unjust enrichment, *both of which are based on the same facts.*") (emphasis added).

## IV. Because the Debtor participated in the transfer at issue, all claims in the complaint are barred.

The Debtor is estopped from avoiding the transfer, as he expressly agreed to that transfer. Initially the Debtor sought to avoid the lien [*Hansmeier*, Doc. 23], but then withdrew that objection [*id.*, Doc. 46] and entered into agreement to sell the property prior to conversion. *In re Krick*, 373 B.R. at 607. On motion to the Court, the Debtor, knowing of his own appeal, expressly and unequivocally agreed to the transfer to the Defendants. *Id.*, Doc. 49. "Ratification occurs when a person with 'full knowledge of all the material facts, confirms, approves, or sanctions, by affirmative act or acquiescence, the originally unauthorized act of another.'" *Trs. of the Graphic Commun. Int'l Union v. Bjorkedal*, 516 F.3d 719, 730 (8th Cir. 2008) (citations omitted). See also *Carpenter v. Vreeman*, 409 N.W.2d 258, 262 (Minn. Ct. App. 1987) ("To establish a waiver or ratification of fraud,

---

[3] As well as one as to which Defendants do not consent to entry of a final judgment by the Bankruptcy Court.

there must be evidence that the waiving party had full knowledge of the facts and his or her legal rights, and intended to relinquish these rights.").

Where a party has authorized, consented to, participated in, or ratified a transfer of assets, nor invoked his right to revocation, he "can hardly claim to have been defrauded by [the transfer], or otherwise to be victim[] of it," and fraudulent transfer law may not be invoked for his benefit. *In re Lyondell Chem. Co.*, 503 B.R. 348, 383–84 (Bankr. S.D.N.Y. 2014). "A fraudulent transfer is not void, but voidable; thus, it can be ratified by a [debtor] who is then estopped from seeking its avoidance." *In re Adelphia Recovery Trust*, 634 F.3d 678, 691 (2d Cir. 2011) (*quoting In re Best Prods. Co.,* 168 B.R. 35, 57 (Bankr. S.D.N.Y. 1994)); *see also In re Hasley*, 2014 Bankr. LEXIS 5035, *11, 19 (Bankr. D. Neb. 2014) (debtors' objections to claims of creditor lender were without merit because debtors had ratified each of the loans and were estopped from pursuing the objections).

> Unjust enrichment contemplates an involuntary or nonconsensual transfer, unjustly enriching one party. A defendant is not unjustly enriched and therefore not required to make restitution where the benefit was conferred by a volunteer. Thus, a person cannot use the courts to recover money voluntarily or consensually paid with full knowledge of all of the facts and without fraud, duress, or extortion in some form. This doctrine is often referred to as the "voluntary payment doctrine" or the "volunteer rule" and is considered an exception to the principle of restitution. Thus, it is universally recognized that money voluntarily paid under a claim of right to payment and with knowledge of the facts by the person making the claim cannot be recovered on the ground that the claim was illegal, or that there was no liability to pay in the first instance.

66 Am. Jur. 2d *Restitution and Implied Contracts* § 92.

Likewise, "[f]raudulent [transfer] statutes were not intended to protect transferors from their own generosity, stupidity, or improvidence …" *In re Murphy*, 331 B.R. 107, 126 (Bankr. S.D.N.Y. 2005) (*citing Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000)).

The law is clear in this state that a lien upon land is no more than a hold or claim thereon as security for some debt or charge of the lienor. It is in no sense an estate or interest in the land. *In re Gau*, 230 Minn. 235, 41 N.W.2d 444 (1955); *Donohue v. Ladd*, 31 Minn. 244, 17 N.W. 381 (1883). Subsequent to the sale free and clear and the escrowing of the proceeds therefrom, there no longer existed any property of the estate under § 541(a)(1), especially upon the conversion of this case to a Chapter 7. "Such an argument appears 'quite compelling' indeed." *In re Zachman,* 83 B.R. 633 *In re Krick*, 373 B.R. 593, 607 (Bankr. N.D. Ind. 2007) (upon conversion from Chapter 13 to Chapter 7, "creditors should benefit from the circumstances that existed on the date of the filing of the Chapter

13 case, subject to the freedom provided by § 1327(b) for the debtor to treat his/her/their property as her/his/their own without court intervention at every turn").

The Debtor (nor the Trustee), with knowledge of the transfer and the appeal, did nothing to challenge the transfer until it appeared adverse to his interests. By his inaction, he acquiesced and consented to the transfer. *Barnes v. Heckman* (*In re Material Eng'g Assocs.*), 168 B.R. 204, 210 (Bankr. D. Mo. 1994) (citing *Turner v. Browne*, 351 Mo. 541, 173 S.W.2d 868, 875–76 (Mo. 1943)).

The only means to recover estate property that a debtor voluntarily transferred after the bankruptcy filing is set forth in 11 U.S.C. § 549. *In re Anderson*, 511 B.R. 481, 496, 497 (Bankr. S.D. Ohio 2013), *aff'd* 510 B.R. 113 (B.A.P. 6th Cir. 2014). The complaint states no such claim, and even if it had, the Debtor lacks standing to bring it.

**V.   The complaint fails to adequately state a claim for fraud pursuant to Rule 9(b).**

Pursuant to Bankruptcy Rule 7009, which makes Rule 9(b) applicable to this adversary proceeding, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud and mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b).

**A.   References to the Defendants collectively do not satisfy the heightened pleading standards of Rule 9(b).**

The allegations in the complaint that refer to the Defendants collectively do not satisfy the heightened pleading standards of Rule 9(b), nor do they provide adequate notice under the more liberal pleading standard of Rule 8(a). *Swierkiewicz v. Sorema*, N.A., 534 U.S. 506, 514–515 (2002). When a claim is asserted against multiple defendants, Rule 9(b) requires specific, separate allegations detailing the allegedly fraudulent conduct of each defendant. *See, e.g. Haskin v. R.J. Reynolds Tobacco C*o., 995 F. Supp. 1437, 1440 (M.D. Fla. 1998); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (complaint cannot group defendants together without specifying which defendant was involved in which fraudulent activity). In other words, a complaint cannot, consistent with, group all defendants into "one wrongdoing monolith." *First American Bank and Trust by Levitt v. Frogel*, 726 F. Supp. 1292, 1295 (S.D. Fla. 1989). At a minimum, the complaint must plead sufficient facts to show each defendant's allegedly fraudulent conduct, or each defendant's role in a scheme to commit fraud. Accordingly, a complaint cannot rest on mere conclusions, but must plead sufficient "factual matters" and "possess enough heft" to show that the pleader is entitled to relief. *Iqbal*, 556 U.S. at

674–75. In the present case, the complaint fails to do just that. Accordingly, the complaint does not provide Defendants with fair notice of the grounds of the claims asserted against them.

**B. The complaint fails to identify whether the fraud claimed is actual or constructive.**

Even if the Debtor could state a claim under § 548, the applicability of Rule 9(b) to fraudulent transfer claims turns on the nature of claim. *Butler v. Goldetsky*, 1996 Bankr. LEXIS 2017, *7 (Bankr. D. Minn. 1996).

To succeed, the Debtor has to establish that there has been actual or constructive fraud under either § 544 or § 548 and that the Defendants are parties from whom it could seek recovery under § 550. *Kipperman v Onex Corp.* 411 B.R. 805 (N.D. Ga. 2009). However, the complaint lacks any specific factual allegations identifying which, if any, of the Defendants possessed an actual or fraudulent intent. *In re Duke and King Acquisition Corp.*, 508 B.R. 107, 135 (Bankr. D. Minn. 2014). Nor does the complaint claim that transfer or any material facts were concealed, nor does it claim that the Debtor was insolvent when transfer was made. *Henry v. Lehman Commer. Paper, Inc.*, 471 F. 3d 977, 1008 (9th Cir. 2006).

Contributing to the complaint's ambiguity, the transfer has alternatively been described as a "preferential" transfer [*Seaver*, Doc. 1 at ¶ 37]; an "improperly obtained" transfer [*id.*, at ¶ 40]; and "a simple claim for restitution" [*id.*, Doc. 14 at 10]. It has also been asserted the "Complaint does not contain a claim for a fraudulent transfer sounding under 11 U.S.C. § 548. Furthermore, no fraud has been alleged in the Complaint." *Seaver v. Chowdhury et al*, No. 17-cv-00723, Doc. 16 at 33 (D. Minn.) (hereinafter "*Seaver II*"). It is not incumbent upon the Defendants to suss out what the basis for the claims are. This repeat failure to specify what form of relief is being sought and under which theory of law frustrates any meaningful defenses as a right to recover differs dramatically depending on which statute applies. *In re Human Dynamics Corp.*, 2012 U.S. Dist. LEXIS 126838, *23 (D. Ariz. 2012) (*citing In re Cohen*, 300 F.3d 1097, 1102 (9th Cir. 2002)). The complaint's failure with matching the essence to the sparse pleading of its fraud theory, cannot support a judgment in its favor. *In re Duke and King Acquisition Corp.,* 508 B.R. at 135. The complaint's fraudulent transfer claims under §§ 544, 548 and 550 of the Bankruptcy Code must be dismissed under black-letter substantive bankruptcy law.

**VI. The Debtor is estopped from contesting his liability for judgments held against his alter-egos.**

This circuit has recognized that a defense of *res judicata* may be raised in a motion to dismiss when the identity of the two actions can be determined from the face of the petition. *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008); *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763–64 (8th Cir. 2012). "When ruling on a motion to dismiss under Rules 12(b)(6) or 12(c), a district court generally may not consider materials outside the pleadings. However, it may consider … materials that are necessarily embraced by the pleadings." *Noble Sys. Corp. v. Alorica Cent.*, LLC, 543 F.3d 978, 982 (8th Cir. 2008) (*quoting Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir.1999) (internal quotation omitted).)

*Res judicata* can take one of two forms, claim preclusion or issue preclusion. *In re Anderberg-Lund Printing Co.,* 109 F.3d 1343, 1346 (8th Cir. 1997) "Issue preclusion (or collateral estoppel) applies to legal or factual issues actually and necessarily determined, with such a determination becoming conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id.* (*citing Montana*, 440 U.S. at 153–54) (internal quotation omitted). The principles of *res judicata* apply to bankruptcy proceedings. *Katchen v. Landy*, 382 U.S. 323, 334 (1966); *Heiser v. Woodruff*, 327 U.S. 726, 736 (1946) (There is "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*."). Issue preclusion applies even if a previous decision was decided wrongly, or in error. *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010).

"The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor*, 553 U.S. at 891 (*citing Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–508 (2001)); *Held v. Mitsubishi Aircraft International, Inc.*, 672 F. Supp. 369, 387 (D. Minn. 1987). The party asserting issue preclusion under federal common law must make a showing that  (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment. *Sandy Lake Band Mississippi Chippewa v. United States*, 714 F.3d 1098, 1102–103 (8th Cir. 2013) (*quoting Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007)).

Applying these "federal preclusion principles," the Debtor was properly made jointly and severally liable with AF and Prenda and cannot contend otherwise, because the issue of his

controlling, alter-ego relationship with AF and Prenda was litigated and adjudicated against him in *Ingenuity 13*.

### A. The issue of the Debtor's use of AF as an alter-ego was raised and adjudicated in *Ingenuity 13*.

The Debtor's alter-ego relationship with AF and control over its litigation were squarely at issue in *Ingenuity 13*, contested in both the district and appellate courts, and resolving those issues was essential to the sanctions judgment on the merits against him. The identity of the issues need not be absolute; rather, it is enough that the issues are in substance identical. *Montana v. United States*, 440 U.S. 147, 155 (1979)); *Comm'r v. Sunnen*, 333 U.S. 591, 601 (1948). Issue preclusion is applicable even when the causes of action differ. The relevant question is not the identity of the causes of action in the two cases; it is the identity of the legal or factual issues raised in those cases that matters. *In re Anderberg-Lund Printing Co.,* 109 F.3d at 1346; *accord Montana*, 440 U.S. at 154–55.

The *Ingenuity 13* court thoroughly explored the deceptive enterprise in which the Debtor, John Steele, and Paul Duffy—the Principals—used AF as a shell company plaintiff in litigation they ran behind the scenes. *Hansmeier,* Doc. 192-3; *see also id.,* Doc. 192-8. The court found that "the Principals are the *de facto* owners and officers" of AF, which they formed "for the sole purpose of litigating copyright-infringement lawsuits" over which they maintained full control: "The Principals dictated the strategy to employ in each case … and possessed all financial interests in the outcome of each case." *Hansmeier,* Doc. 192-3 at 3. *See also Ingenuity 13 LLC v. John Doe*, 2013 U.S. Dist. LEXIS 100849, *8 (C.D. Cal. 2013) (noting that Principals and AF "continue to act in concert" and "have a history of conspiring together—there is nothing to suggest that they have stopped.").

### B. The issue of the Debtor's alter-ego relationship with AF was actually litigated in *Ingenuity 13*.

As required for preclusion to apply, the pertinent issues were actually litigated and determined in detailed findings of fact, "[b]ased on the evidence presented on the papers and through sworn testimony." *Hansmeier,* Doc. 192-3 at 2. The Debtor was made a party to the *Ingenuity 13* sanctions proceedings, ordered to appear and show cause why he should not be sanctioned. *Id.,* at 2–3. He argued that he was not subject to personal jurisdiction, but the court found "at least specific jurisdiction over [the Principals] because of their pecuniary interest and active, albeit clandestine participation in these cases." *AF Holdings LLC v. Navasca,* 2013 U.S. Dist. LEXIS 118110, *3 n. 1

(N.D. Cal. 2013). The Debtor did not attend the first show-cause hearing as ordered; at the second, all three Principals invoked the Fifth Amendment, and the court drew adverse inferences from their refusal to testify. *Hansmeier,* Doc. 192-3 at 2 n. 3 (*citing Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

The Debtor had, but chose not to exercise, a full and fair opportunity to procedurally and substantively litigate the issue of his alter-ego liability in *Ingenuity 13. Ingenuity 13 v. Doe,* 651 Fed. App'x. 716 (9th Cir. 2016) (holding "that due process—notice, the opportunity to be heard, and a finding of bad faith—had been afforded"); *see also Hansmeier,* Doc. 192-8 at 10 ("AF, Steele and Hansmeier all had a full and fair opportunity to litigate these very issues in *Ingenuity 13.* … Any prejudice they might have suffered … was caused by their own gamesmanship and failure to appear at the hearing in violation of Judge Wright's order."). Adopting the magistrate's report, the *Navasca* court noted that the Debtor "refused to give testimony at the second OSC hearing where they could have explained what their relationship with AF was." *Hansmeier,* Doc. 192-9 at 7. It further found support for the *Ingenuity 13* findings that the Debtor is one of AF's *de facto* owners in the Debtor's testimony, as AF's Rule 30(b)(6) deponent, that AF had no officers with titles like CEO, president, treasurer or secretary. *Id.,* at 9. The Debtor control over AF and so "had a sufficient 'laboring oar' in the conduct of the [prior] litigation to actuate principles of estoppel." *Montana*, 440 U.S. at 155. The mere invoking of the Fifth Amendment privilege does *not* disallow issue preclusion in subsequent cases. *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328 (1971) (where issue was "squarely raised," giving a "'full and fair opportunity for judicial resolution of the issue,' … silence alone satisfied the [actual litigation] criterion under the collateral estoppel analysis"). That the Debtor chose not to testify, does not limit the preclusive effect of the order.

**C. The alter-ego findings against the Debtor were in final judgments on the merits.**

The *Ingenuity 13* order sanctioning the Debtor was sufficiently final for issue preclusion to apply. The precluded issue need not be the ultimate issue decided; "issue preclusion can extend to necessary intermediate findings … even where those findings are not explicit." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012) (citations omitted). "'When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.'" Restatement (Second) of Judgments § 27 cmt. d (1982)). The *Ingenuity 13*

court determined the pertinent issues in detailed findings of fact, "[b]ased on the evidence presented on the papers and through sworn testimony." *Hansmeier,* Doc. 192-3 at 2.

The Debtor was a party to the sanctions proceedings in *Ingenuity 13.* A sanctions order may be the basis of issue preclusion in subsequent cases, as the *Navasca* court specifically held about the *Ingenuity 13* sanctions order. *See In re Wasko*, 2013 Bankr. LEXIS 1667 (Bankr. 9th Cir. 2013). Issues decided in a post-judgment order may be preclusive: "it is well established that the finality requirement for collateral estoppel does not require a final judgment." *Pina v. Rodriguez*, 278 F. Supp. 2d 195, 203 (D.P.R. 2003).

It was uncontested that the *Ingenuity 13* order "was a final judgment on the merits" when the *Navasca* court found issue preclusion applied. *Hansmeier,* 192-8 at 10. Its finality was necessary to the Ninth Circuit's jurisdiction under Rule 54(a) and 28 U.S.C. § 1291, and to its affirmance. *Ingenuity 13*, 651 Fed. App'x. 716. And it was uncontested when the Debtor appealed the *Ingenuity 13* order, which he accurately termed a "final order" to support the Ninth Circuit's jurisdiction under 28 U.S.C. §1291. *Ingenuity 13, LLC v. John Doe*, No. 13-55859 (9th Cir. filed Nov. 18, 2013). Rather, the Debtor's opportunity to appeal itself supports a determination that the *Ingenuity 13* order was fully and fairly litigated.

**D. The determinations concerning the Debtor and his alter-ego status were essential to the preclusive decisions in prior litigation.**

The *Ingenuity 13* court's alter-ego, litigation-control and undisclosed financial interests findings were necessary grounds for its order sanctioning the Debtor. "A determination ranks as necessary or essential only when the final outcome hinges on it." *Bobby v. Bies*, 556 U.S. 825, 835 (2009) (*citing* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4421, at 543 (2d ed. 2002)). For issue preclusion purposes, "a finding is 'necessary' if it was central to the route that led the fact-finder to the judgment reached, even if the result 'could have been achieved by a different, shorter, and more efficient route.'" *Hoult v. Hoult*, 157 F.3d 29, 32 (1st Cir. 1998).

The *Ingenuity 13* court's findings that AF and Ingenuity 13 LLC ("Ingenuity") were shell companies, formed and *de facto* owned and operated by the Principals, resulted from the court ordering them to "show cause why they should not be sanctioned for their behind-the-scenes role in the conduct facially perpetrated by Gibbs." *Hansmeier*, Doc. 192-3 at 2; *id.* ("It was when the Court realized Plaintiffs engaged their cloak of shell companies and fraud that the Court went to battlestations."). That behind-the-scenes role was central to the determination in *Ingenuity 13* that

sanctions were appropriate. The court sought to redress not only specific instances of fraud but a systematic reliance on deception whereby the Principals had not "assigned the copyright to themselves, brought suit in their own names, and disclosed that they had the sole financial interest in the suit," but instead, hired other lawyers to file suits in the names of shell companies such as AF. *Id.* at 5. Findings that the Principals set up the shell companies, "maintained full control over the entire copyright-litigation operation," and "conspired to operate this enterprise," justified imposing those sanctions on the Principals, and not just on AF. *Id.* at 2–5.

The Ninth Circuit affirmed *Ingenuity 13* on all grounds and specifically affirmed the findings that they controlled and bore responsibility for the cases litigated in AF's name:

> Based on the myriad of information before it—including depositions and court documents from other cases around the country where the Prenda Principals were found contradicting themselves, evading questioning, and possibly committing identity theft and fraud on the courts—it was not an abuse of discretion for Judge Wright to find that Steele, Hansmeier, and Duffy were principals and the parties actually responsible for the abusive litigation. Similarly, it was not an abuse of discretion for Judge Wright to find that the Prenda Principals were indeed the leaders and decision-makers behind Prenda Law's national trolling scheme.

*Ingenuity 13 v. Doe*, 651 Fed. App'x. 716 (9th Cir. 2016) (footnote omitted). "If … 'the appellate court' affirms both grounds of the holding, each receives preclusive effect." *In re Baylis*, 217 F.3d 66, 70–71 (1st Cir. 2000) (*quoting* 1 Restatement (Second) of Judgments § 27 cmt. o)).

## CONCLUSION

For the reasons stated above, the complaint should be dismissed with prejudice.

Dated: January 3, 2018

Respectfully,

s/ Jason E. Sweet
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com
*Counsel for Defendants*
*Pro Hac Vice Appearance*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re: | Chapter 7 |
| PAUL HANSMEIER, | No. 15-42460 |
| Debtor. | |

---

| | |
|---|---|
| PAUL HANSMEIER, Debtor, | Adv. No. 16-04124 |
| Plaintiff | |
| v. | |
| SANDIPAN CHOWDHURY and BOOTH SWEET LLP, | |
| Defendants. | |

---

I hereby certify that on January 3, 2018, I caused the following documents:

1. Motion to Dismiss;
2. Memorandum in Support of Motion to Dismiss;
3. Proposed Order.

to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a).

I further certify that I have emailed a copy of the foregoing documents and will cause a copy to be mailed by first class mail to the entities and individuals listed below:

Paul Hansmeier
3749 Sunbury Alcove
Woodbury, MN 55125

Dated: January 3, 2018

Respectfully,

s/ Jason E. Sweet
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

---

In re:                                          Chapter 7

PAUL HANSMEIER,                                 No. 15-42460

     Debtor.

---

PAUL HANSMEIER, Debtor,                         Adv. No. 16-04124

     Plaintiff

     v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

---

## ORDER GRANTING MOTION TO DISMISS

---

     This case is before the Court on a motion by the Defendants for an order to dismiss the complaint. Based on the record, the Court determines that Defendants' motion is appropriate. Accordingly, IT IS HEREBY ORDERED that the Defendants' motion to dismiss the complaint is granted.

Dated:

                               _____
                               Kathleen H. Sanberg
                               Chief United States Bankruptcy Judge