**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

_____

In re:                                                    Chapter 7

PAUL HANSMEIER,                                           Case No. 15-42460

     Debtor.

_____

Paul Hansmeier, Debtor,

     Plaintiff,

v.                                                        Adversary No. 16-04124

Sandipan Chowdhury and Booth Sweet, LLP,

     Defendants.

_____

**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION**

_____

Disputed portions of the Report and Recommendation ("R&R") are reviewed *de novo*, and the District Court may accept, reject, or modify the recommended dispositions, among other options. Fed. R. Civ. P. 72(b)(3).

**BACKGROUND**

Between 2010 and 2017, Paul Hansmeier ("Hansmeier") conspired to file fraudulent copyright lawsuits on behalf on non-existent entities, including AF Holdings LLC, and keep any settlements collected for himself. *U.S. v. Hansmeier et al*, No. 16-CR-00334, ECF No. 1 at ¶¶ 1, 22, 23, 26(a) (D. Minn. Dec. 14, 2016). Hansmeier, using the AF Holdings alias, filed suit against Defendant Chowdhury in the District Court of Massachusetts. *AF Holdings v. Chowdhury*, No. 12-CV-12105 (D. Mass. 2012) ("*AF Holdings*"). An uncontested default judgment was entered jointly and severally against AF Holdings and Hansmeier, which Hansmeier appealed. *AF Holdings*, Doc. 34 (Oct. 22, 2013). The judgment was later registered as a lien on Hansmeier's homestead.

The *Ingenuity 13* Court's ruling that Hansmeier could be held liable for the acts of his alter egos kicked off a firestorm of adverse rulings for him. *Ingenuity 13 LLC v. Doe*, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal. 2012) aff'd 651 Fed. App'x. 716 (9th Cir. 2016). In an effort to frustrate his growing number of creditors, filed for bankruptcy in July 2015. *In re Hansmeier*, No. 15-BK-42460,

1

("*Hansmeier*"); *id*., Doc. 78 at 47:12–20 ("this case was designed for one purpose only, to thwart the collection efforts of creditors"). On the basis of Hansmeier's pre- and post-petition fraud, the bankruptcy was converted to Chapter 7. *Id.*, Doc. 60; *id.*, Doc. 110 at 9 (Hansmeier "filed misleading or false documents in this case and provided potentially false testimony at his Rule 2004 examination"); *In re Hansmeier*, 558 B.R. 299, 302–303 (B.A.P. 8th Cir. 2016). Prior to conversion, Hansmeier moved to avoid the lien [*Hansmeier,* Doc. 23], then later withdrew the motion [*id*., Doc. 46] and petitioned for, and was granted, permission to sell his homestead pursuant to 11 U.S.C. §§ 363, 1303 and use the proceeds to pay the Defendants. *Id.*, Doc. 49 at 4–5; *id.*, Doc. 78 at 17:25; *id.*, Doc. 59 at ¶ 3.[1]

The Defendants were voluntarily paid by Hansmeier in late December 2015. In August 2016, the First Circuit vacated and remanded the *AF Holdings* Court's judgment against Hansmeier on a procedural issue. *AF Holdings*, Doc. 76. However, the judgment against AF Holdings still stands. *Id.*, Doc. 78. In addition to the several district and appellate court determinations that Hansmeier was the alter-ego of AF Holdings, Hansmeier has since pleaded guilty to controlling and owning of AF Holdings. Doc. 64.

Hansmeier's waiver of discharge was granted on January 3, 2018. Upon the denial of the discharge, the Estate ceased to exist. *See e.g. Rodriguez v.Countrywide Home Loans, Inc.* (*In re Rodriguez*), 396 B.R. 436, 453 (S.D. Texas 2008); *In re Hansmeier*, Doc. 262.[2]

## PROCEDURAL BACKGROUND

On March 26, 2018, Hansmeier sent two distinct sets of post-judgment discovery requests on each Defendant. The requests were not signed and did not include the certification of service required under Rule 26(g). Doc. 54 (Exhibits to First Motion to Compel). Thus, Defendants were not obligated to respond. Doc. 63 at 5–7 (citing cases); Doc. 68. Likewise depositions for the Defendants', both Massachusetts residents, were noticed for Minnesota—which Defendants were not required to attend. Doc. 63 at 4–5 (citing cases); Doc. 67 at ¶ 3.

---

[1] The Bankruptcy Court asserts it "was not informed that the judgment was on appeal" when it granted the motion to sell. As Defendants have previously demonstrated, the record proves otherwise. *Chowdhury v. Hansmeier,* No. 18-CV-00761, Doc. 15 at 46 ("*Chowdhury*") (collecting citations to the record).

[2] Any contention that any unsecured creditors remain is misplaced. Again the waiver ended the Estate. Further, Defendants have shown that no recovery will endure to the benefit of any alleged "creditors." Doc. 124 at 11–13. *Cf. Matter of Melvin,* 64 B.R. 104, 107 (Bankr. W.D. Mo. 1986) (bankruptcy court is responsible to see estates are administered for the benefit of creditors rather than for the trustee and his attorneys); *Matter of Global Int'l Airways Corp.*, 17 B.C.D. 120, 123 (Bankr. W.D. Mo. 1988).

On May 3, 2018, Hansmeier moved pursuant to Rule 37 to compel Defendants' compliance with his requests. Doc. 54 at 4. He did so knowing that a request for a stay was already pending in the appeal to the District Court. Doc. 55 at 1; Doc. 63 at ¶ 14. *See also Chowdhury*, Doc. 8. The motion was denied without prejudice so as to avoid a conflicting ruling. Doc. 58. The Defendants' stay was denied by the District Court on July 13, 2018. *Chowdhury*, Doc. 16.

On August 7, 2018, Hansmeier renewed his motion to compel without first conferring with Defendants. Doc. 62; Doc. 63 at 1. Defendants opposed stating they had never been served with formal discovery requests. Doc. 63 at 5–7. Had Hansmeier first conferred, Defendants could have alerted him to the deficiency in his requests.

At the August 21 hearing, the Bankruptcy Court ordered Hansmeier to file proof of service of the signed requests. If he were able to, Defendants would have 14 days to respond to the discovery requests. Doc. 107 at 18:11–14. If he was unable to, Defendants would then have 30 days to respond. *Id.* Hansmeier filed, as proof of service, signed copies of the certification of service and discovery requests. The copies were all dated March 26, 2018. Doc. 65. However, there was no indication given as to when the copies were signed; if they were signed at the time they were allegedly sent; or if signed copies were in fact ever sent to the Defendants. Doc. 68. Nor was there any explanation as to how the previously unsigned requests acquired their *post hoc* signatures. *See* Doc. 54 (Exhibits to First Motion to Compel); Doc. 68. Nonetheless, the Bankruptcy Court found the documents to be sufficient evidence of service. Defendants were ordered to produce written answers to the interrogatories and responsive documents within 14 days from August 21, 2018. Doc. 67. Defendants timely complied and served their responses and objections on September 4, 2018.

On September 7, Hansmeier emailed the Defendants stating their responses were deficient, yet could not state which Defendant's responses were deficient; could not identify any specific deficiencies[3]; nor explain why he considered them deficient. Defendants answered the requests made of them, *e.g.* whether Booth Sweet LLP, a law firm, owned any livestock; and other information already known to Hansmeier, but which he asked for regardless. *See e.g.* Doc. 63 at 13 ¶ 11. Defendants proposed collaborating to define vague terms used in the requests; narrowing the time frame; and crafting an appropriate protective order—because Booth Sweet LLP has represented

---

[3] *See e.g.,* Doc. 77 at Exhibit A. Hansmeier's response to the Responding Party's initial Objections was limited to "you produced zero documents in response to my request for documents." *See also* Doc. 70 (Hansmeier's affidavit in support of contempt ).

numerous victims of Hansmeier, including those specifically identified in the *U.S. v. Hansmeier* criminal complaint; victims whose confidential financial information was now being ordered disclosed to an individual predisposed to abusing such information. *See e.g.* Doc. 55 at 10. Defendants provided a draft protective order for consideration. Doc. 74. Hansmeier responded; disagreeing as to the proposed scope of discovery and rebuking any attempt at collaboration. *Id.*

October 10, Hansmeier filed an affidavit of noncompliance containing several averments of fact, despite those facts being contradicted by the record. *See e.g.* Doc. 70 at ¶¶ 5–8. Hansmeier's motion failed to identify with any specificity any alleged deficiencies in either of the Defendants' responses. *Id. See also* Doc. 77 at 5–6. A hearing was then held on October 24, wherein the Bankruptcy Court now claims it made the following relevant findings [Doc. 130 at 8]:

1) Plaintiff's discovery requests were signed, properly served, and *date back to the original date of service*;

Setting aside whether the discovery requests were signed and properly served, there was never any indication the Bankruptcy Court intended its order to relate back "*to the original date of service.*" *Cf.* Doc. 67. First, the time for such a finding to be made was at the August 20 hearing or in its order, not at a hearing almost two months after the Defendants timely complied with the Bankruptcy Court's order and raised their objections [*supra*]. Second, neither the transcript nor the subsequent order make any mention that the court intended its order to relate back. Rather, the Bankruptcy Court's argument is that Defendants should have inferred its intent from the order:

> THE COURT: Right. And what the Court determined after receiving Mr. Hansmeier's affidavit showing the signed form that day, the Court entered the—entered the order and— which means that it goes back to the date that was served.

Doc. 108 at 4:10–14. *Cf.* Doc. 67.

6) Defendants had waived their right to object to the Plaintiff's discovery requests pursuant to Federal Rules of Civil Procedure 33 and 34;

The *Cargill* Court identified six factors to consider in determining whether to excuse a waiver: "(1) the length of the delay; (2) the reason for the delay; (3) whether the responding party acted in bad faith or engaged in any dilatory action; (4) whether the requesting party has been prejudiced; (5) whether the request was overly burdensome; and (6) whether waiver would impose a harsh result on the defaulting party." *Id.* at 426. "Generally, courts will impose waivers for tardiness under three conditions: (1) where there is no showing of good cause for the late response, (2) where a party has not responded to discovery requests despite court intervention, or (3) where a party has

failed entirely to respond." *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012) (*citing Ayers v. Cont'l Cas.*, 240 F.R.D. 216 (N.D.W.V. 2007)). *Cf.* Doc. 62; 63; 67 and 107.

None of these factors were briefed by the parties or discussed at the August 21st hearing; there was nothing to indicate that the Court intended its order to constitute waiver was found; there is no evidence that Defendants were acting in bad faith or purposefully engaged in any dilatory action; there is no precedent that waiver is automatic with respect to attorney-client and work product privileges [*Carlson v. Freightliner LLC*, 226 F.R.D. 343, 363 (D. Neb. 2004); *Mills v. Iowa*, 285 F.R.D. 411, 413 (S.D. Iowa 2012)]; nor was there any indication that any delay in the production of the requested documents somehow prejudiced Hansmeier in enforcing an unregistered (and thus, unenforceable) judgment. Rather, the Court without addressing any of the factors, found the Defendants had waived all objections to the discovery requests. The Court did so without the issue having ever been briefed by the parties; without applying the six factors for determine waiver; and most importantly—overlooking that the objections had been timely made in Defendants' September 4 responses. Once a discovery objection is timely made, it cannot be retroactively stricken.

On November 21, 2018, Hansmeier again filed for contempt; and again without conferring first or identifying with specificity any alleged deficiencies in Defendants' supplemental responses. Doc. 84 and 85. A hearing was originally set for December 5, 2018; the same day Defendants received the financial statements from their bank. Doc. 94. The hearing was later continued to December 13. On that day, in an effort to balance compliance of the Bankruptcy Court's orders with the obligations owed its clients, as well as to maintain their valid objections, the Defendants produced redacted bank records to Hansmeier.

Contrary to the Bankruptcy Court's assertion that prior to the R&R "[a]ny documents that have been produced are almost completely redacted," only the names of the financial institutions and account numbers were. In fact, the Bankruptcy Court has never seen the produced documents except at the hearing when Hansmeier held up select pages from a distance of about 20 feet. The produced documents were never filed, nor did the Bankruptcy Court request to inspect the documents at the hearing. Yet, in recommending Defendants be arrested for civil contempt, the Bankruptcy Court does not hesitate to aver as fact something for which it has no first hand knowledge.

The Bankruptcy Court imposed contempt sanctions on the Defendants for a sum total for alleged past conduct and directed to the benefit of a non-party to the litigation, the Trustee. Though

labeled as civil in nature, the December 13 sanctions had all the markings of criminal contempt. Defendants filed their appeal that same day. Doc. 96.

Since the beginning of these proceedings, every compromise proposed by the Defendants has been rejected. These efforts included suggesting to the Trustee the funds be placed in a constructive trust until a final adjudication in the District of Massachusetts was reached; and joining the creditors in a motion to hold the Debtor liable for judgments held against his alter-egos. Doc. 29, Exhibit 5 at 16. And most recently proposing a protective order which would have given Hansmeier everything he asked for, but which the Bankruptcy Court denied as "untimely"[4] and "waived". Doc. 108 at 28:9, 30:22–23; *id.* at 28:22–25.

What followed was a rapid series of cascading sanction proceedings[5] premised on Defendants alleged objections waiver, wherein the Bankruptcy Court continued to supplement its initial contempt finding with escalating penalties despite knowing that Defendants compliance would moot the pending appeal. Doc. 124 (*U.S. v. Watson Chapel School Dist.*, 446 F.2d 933, 938 (8th Cir. 1971)).

## ARGUMENT

**I.    The pending R&R is improper as the initial contempt sanction was criminal in nature and Defendants were denied the protections of a criminal proceeding.**

Whether contempt proceedings are civil or criminal depends upon the court's purpose in responding to alleged misconduct rather than the nature of the misconduct itself. *In re Welfare of A.W.*, 399 N.W.2d 223, 225 (Minn. Ct. App. 1987). A reviewing court should focus on the lower court's response, not on the underlying conduct of the parties or the characterization of proceedings by the parties and trial judge. *Shillitani v. United States*, 384 U.S. 364, 369 (1966).

In determining the amount of any sanction, the Bankruptcy Court was required to consider (1) "the character and magnitude of the harm threatened by continued contumacy," (2) "the probable effectiveness of any suggested sanction in bringing about the result desired," and (3) "the amount of [the contemnor's] financial resources and the consequent seriousness of the burden" to that particular party. *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947). "The record must reflect that

---

[4] *See, Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216, 221 (N.D. W.Va. 2007) (noting that Rule 26(c) does not "contain any explicit time limit for filing a motion for a protective order."

[5] Defendants have argued that once they appealed the December 13 contempt order, the Bankruptcy Court was divested of jurisdiction to reexamine, change or supplement the order through subsequent proceedings—such as the January 9 order and the current R&R. *See* Doc. 124 at 8–9; *Missouri v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1106 (8th Cir. 1999).

these factors were considered." *Edeh v. Carruthers,* 2011 U.S. Dist. LEXIS 118210, *9 (D. Minn. Sep. 20, 2011) (*citing United Mine Workers*, 330 U.S. at 303–304). The record shows the Bankruptcy Court did not consider any of these factors in determining whether civil contempt or the sanctions awards were appropriate. *Chaganti & Assocs.*, 470 F.3d at 1224. *Cf. e.g.* Doc. 124 at 12 n.3 (Defendants unaccepted offer to the Bankruptcy Court of their financials, for *in camera* review, showing an inability to pay).[6] The Bankruptcy Court's failure to apply the factors or explain the basis for the awards indicates the contempt and sanctions are not only inappropriate, but criminal in nature. *Baycol Steering Comm.,* 419 F.3d at 808 (*citing Vollmer v. Publishers Clearing House*, 248 F.3d 698, 711 (7th Cir. 2001)).

Civil contempt is a sanction to coerce compliance with an order of the court or to compensate for losses or damages sustained by reason of the noncompliance. *McComb v. Jacksonville Paper, Co.*, 336 U.S. 187, 191 (1949); *Chicago Truck Drivers Union Pension Fund v. Brotherhood Labor Leasing,* 207 F.3d 500, 505 (8th Cir. 2000). Neither of these rationales supports a judgment of civil contempt let alone the current relief requested by the Bankruptcy Court in this case. In this case, the Bankruptcy Court imposed daily fines for noncompliance. Although 'the daily nature of the sanction suggests that it may have been designed to coerce compliance, *see Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994), the orders themselves are not clear that coercion was the sole purpose of the sanction.' *Chaganti & Assocs. v. Nowotny*, 470 F.3d 1215, 1224 (8th Cir. 2006).

The Bankruptcy Court's initial contempt order stated the Defendants "were subject to a civil contempt sanction of $250.00 per day of non-compliance." Doc. 79 at ¶ 2. It further stated sanctions would be "enforced beginning 48 hours from entry of this order and shall continue until the Defendants have fully complied." *Id.* However, the order had merely found Defendants in contempt, it did not impose a sanction—instead, if Hansmeier filed an affidavit of non-compliance, the court would schedule a further, continued hearing on the matter. "Until a sentence or sanction has been made to exist as to a contempt adjudication, the situation is lacking in the elements of operativeness and consequence necessary to be possessed by any judicial order to enable it to have the status of a final decision." *Isaacson v. Manty* (*In re Yehud-Monosson USA, Inc.*), 472 B.R. 868, 881 (D. Minn. 2012). That is, Defendants alleged contempt could not have begun until the entry of the December 13 order. Doc. 95. The requirement Defendants pay accrued civil contempt sanctions of $24,000.00 to

---

[6] Defendants would make the same offer to this Court.

purge their contempt was therefore improper as it was for past conduct which could not be avoided. *Baycol Steering Comm. v. Bayer Corp.,* 419 F.3d 794, 808 (8th Cir. 2005) (*citing F.J. Hanshaw Enters. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137–39 (9th Cir. 2001) (finding sanction was criminal in nature where it could not be avoided through future compliance)). *See also McCrone v. United States*, 307 U.S. 61, 64 (1939) (If the court's purpose is to vindicate its authority and punish the contemnor for past behavior, it must conduct a criminal contempt proceeding.); *Coleman v. Espy*, 986 F.2d 1184, 1190 n.3 (8th Cir. 1993).

More so, when a sanction is designed to coerce compliance, the sanction should be payable to the court, rather than to the opposing party. *Hicks v. Feiock*, 485 U.S. 624, 632 (1988). Here, the December 13 (and January 9) order required the sanctions to be paid to the Trustee, a non-party to the case. Doc. 95 and 121. The Trustee had previously assigned the Estate's rights in this proceeding to Hansmeier. Doc. 92 at 5; *id*., at Exhibit A. *See also Giles v. GE*, 2013 U.S. Dist. Lexis 196702, *4 (W.D. Mo. 2013) ("An assignment divests the assignor of all rights and interests in the subject of the assignment."). "A civil contempt fine cannot be payable to a non-party … without losing its compensatory nature … [thus,] only parties harmed by … [the contemnor's non-compliance are] entitled to compensation" through a civil contempt fine. *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984)).

The contempt award also cannot be compensatory as Hansmeier has never put forth any evidence of losses or damages resulting from the alleged conduct of which he complains. A sanction, which is not concretely tailored to compensate the movant for actual costs resulting from the misconduct has characteristics of a criminal penalty which other courts have held to require the procedural protections of a criminal trial. *Baycol Steering Comm.,* 419 F.3d at 808 (*citing Bradley v. Am. Household, Inc.*, 378 F.3d 373, 378–79 (4th Cir. 2004)).

Because there is every indication that the December 13 sanctions are criminal in nature, and that the Defendants were denied the protections of a criminal proceeding, the sanctions cannot stand. Nor can the subsequent January 9 sanctions or pending R&R, as they are premised on that initial, improper sanction.

## II.    Defendants' alleged contempt is substantially justified.

Any sanctions—including arrest—imposed for failing to comply with a discovery order must be reasonable in light of the circumstances, and a sanction is reasonable only if its character and

magnitude are proportionate to the character and magnitude of the violation of the underlying discovery order, and the harmful consequences of that violation. A court should not hold a party in contempt: "where there is ground to doubt the wrongfulness of the respondent's conduct." *Littlejohn v. Bic Corp.*, 851 F.2d 673, 683–84 (3d Cir. 1988).

Even if the Defendants were in contempt, it would be substantially justified. Fed. R. Civ. P. 37 provides for sanctions for failure to obey a discovery order, unless the failure was substantially justified or that other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5); (d) (3); *see also Arnold v. ADT Sec. Servs.,* 627 F.3d 716, 720 (8th Cir. 2010). On the issue of "substantial justification," the Supreme Court has noted that:

> In an area related to the present case in another way, the test for avoiding the imposition of attorney's fees for resisting discovery in district court is whether the resistance was "substantially justified," Fed.Rules Civ.Proc. 37(a)(4) and (b)(2)(E). To our knowledge, that has never been described as meaning "justified to a high degree," but rather has been said to be satisfied if there is a "genuine dispute," or "if reasonable people could differ as to [the appropriateness of the contested action][.]"
>
> We are of the view, therefore, that as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here is not "justified to a high degree," but rather "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue.

*Pierce v. Underwood*, 487 U.S. 552, 564–565 (1988) (citations omitted); *see also Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997) ("Substantially justified means that reasonable people could differ as to the appropriateness of the contested action."); 8A Charles Allen Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2288, at 665–666 (2d. ed. 1994 ("Opposing a motion is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule.").

Defendants have repeatedly argued as to the preclusive effect on this proceeding of the prior decisions determining Hansmeier's liability for judgment held in the name of his alter egos, as well as Hansmeier's own confession on the issue. *See e.g.* Doc. 36 at 15–20; Doc. 38 at Exhibit A; Doc. 56 at 12–13; Doc. 77 at 4; Doc. 85 at 10–12; *In re Hansmeier*, Doc. 191. However, this Court has declined to address the issue.

> Contrary to the defendant's arguments, the alter ego theory that they assert has not been properly litigated … [because] [t]his issue has not been litigated in this court.

9

Doc. 23 at 30:2–4; 31:15–16. *Cf. Heiser v. Woodruff*, 327 U.S. 726, 736 (1946) (There is "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata*."); *Ginters v. Frazier*, 614 F.3d 822, 826 (8th Cir. 2010) (Issue preclusion applies even if a previous decision was decided wrongly, or in error.).

> And the irony is given the situation that we have with regard to Mr. Hansmeier and the criminal case and all of these other cases, but those have no bearing on this case. They have no bearing on this case.

Doc. 108 at 6:20–24. However, the pre-bankruptcy and continuing litigation in Massachusetts; the findings of several federal and appellate courts; and Mr. Hansmeier's guilty plea have everything to do with these proceedings. *See e.g.* Doc. 36 at 15–20; Doc. 38 at Exhibit A; Doc. 56 at 12–13; Doc. 77 at 4; Doc. 85 at 10–12; *In re Hansmeier*, Doc. 191.

This contention is not only substantially justified, but it is one for which the former Chief Judge of this Court, Dennis O'Brien, has recently opined his support.

> There was ample support in the various cases cited above and in Mr. Godfread's submission to the bankruptcy court that Prenda Law was Mr. Hansmeier's alter ego. As noted by Mr. O'Brien, the issue regarding the effects of a judgment against an alter ego is a legal one that should have been resolved by the court on the facts and the law.

Doc. 120, Exhibit B at 5.

At all times, Defendant Chowdhury has an enforceable judgment against AF Holdings, and by virtue of the numerous findings of other courts, against Hansmeier as its alter-ego. *Two Springs Mbrshp. Club v. Office of the Del. AG* (*In re Two Springs Mbrshp. Club*), 400 B.R. 601 (Bankr. D. Ohio Feb. 9, 2009). Defendants' alleged contempt is substantially justified.

### CONCLUSION

For the reasons set forth in this memorandum, the relief requested in the R&R is simply not warranted.

Dated: January 25, 2019

Respectfully,

s/ Jason Sweet
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com
*Counsel for Defendants*
*Pro Hac Vice Appearance*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:

PAUL HANSMEIER,

     Debtor.

Chapter 7

No. 15-42460

---

PAUL HANSMEIER, Debtor,

     Plaintiff

  v.

SANDIPAN CHOWDHURY and BOOTH SWEET LLP,

     Defendants.

Adv. No. 16-04124

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on January 25, 2019, I caused the foregoing objections to the report and recommendation to be filed electronically with the Clerk of Court through ECF, and that the above documents will be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice pursuant to Local Rule 9006-1(a). I also certify that the document was served via U.S. Mail first class postage prepaid on:

Paul R. Hansmeier
9272 Cortland Alcove
Woodbury, MN 55125

Dated: January 25, 2019

Respectfully,

/s/ Jason Sweet
BOOTH SWEET LLP
BBO# 668596
32R Essex Street
Cambridge, MA 02139
Tel.: (617) 250-8619
Fax: (617) 250-8883
Email: jsweet@boothsweet.com
*Counsel for Defendants*
*Pro Hac Vice Appearance*