UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Sandipan Chowdhury and Booth Sweet LLP, | Case No. 18-cv-0761 (WMW) |
| Appellants, | **ORDER** |
| v. | |
| Paul Hansmeier, | |
| Appellee. | |

---

| | |
|---|---|
| Paul Hansmeier, | Case No. 18-cv-1433 (WMW) |
| Plaintiff, | |
| v. | **ORDER** |
| Sandipan Chowdhury and Booth Sweet LLP, | |
| Defendants. | |

---

In these related bankruptcy matters, Appellants/Defendants Sandipan Chowdhury and Booth Sweet LLP (Appellants) appeal the March 7, 2018 order of the United States Bankruptcy Court for the District of Minnesota, which granted summary judgment in favor of Appellee/Plaintiff Paul Hansmeier. Appellants also move to withdraw the underlying adversary proceeding (Adversary Proceeding Number 16-04124) from the bankruptcy court to this Court. For the reasons addressed below, the motion to withdraw is denied and the bankruptcy court's March 7, 2018 summary judgment order is affirmed.

## BACKGROUND

The facts relevant to this dispute arose in November 2012, when AF Holdings, LLC, commenced a copyright-infringement lawsuit against Chowdhury in the United States District Court for the District of Massachusetts. Chowdhury answered the complaint and asserted counterclaims against AF Holdings. Booth Sweet, a Massachusetts law firm, has at all times represented Chowdhury in both the AF Holdings lawsuit and in the underlying bankruptcy proceedings in this case.

The district court entered default judgment against AF Holdings as to Chowdhury's counterclaims on October 22, 2013. In doing so, the district court held AF Holdings, Hansmeier, and several others jointly and severally liable to Chowdhury for a total amount of $64,180.80 (the *AF Holdings* judgment). Hansmeier moved to set aside the default judgment against him, arguing that the judgment against him was void because he was not a party to the *AF Holdings* lawsuit nor served with process. The district court denied Hansmeier's motion and reaffirmed its prior conclusion that AF Holdings is an alias of Hansmeier and others. Hansmeier appealed the *AF Holdings* judgment to the United States Court of Appeals for the First Circuit. Meanwhile, the district court certified the *AF Holdings* judgment for registration in other districts on April 3, 2014. The *AF Holdings* judgment was registered as a lien on Hansmeier's Minnesota homestead (homestead property) in October 2014.

Hansmeier filed a voluntary petition under Chapter 13 of the Bankruptcy Code on July 13, 2015, in the United States Bankruptcy Court for the District of Minnesota. The schedules attached to Hansmeier's petition identify his interest in the homestead property

2

and list the *AF Holdings* judgment as a disputed debt. Appellants noted their appearance in the bankruptcy proceedings as "Judgment Creditors" in July 2015 and filed a proof of claim as to the *AF Holdings* judgment lien several months later.

In November 2015, the United States Trustee moved to convert Hansmeier's bankruptcy case from Chapter 13 to Chapter 7 based on the bad faith of the debtor. Later that month, Hansmeier moved for an order permitting the sale of the homestead property, with $71,620.90 of the proceeds of that sale to be used to satisfy the *AF Holdings* judgment lien on the property. The bankruptcy court granted both motions in December 2015 and appointed Randall L. Seaver as the Chapter 7 Trustee of Hansmeier's bankruptcy estate. The sale of the homestead property closed on December 15, 2015, and a payment of $71,620.90 was made to Appellants as full satisfaction of the *AF Holdings* judgment.[1]

The First Circuit vacated the *AF Holdings* judgment on August 4, 2016. As relevant here, the First Circuit observed that Hansmeier had not been properly named and served in the district court action and held that "a judgment cannot be entered against those who are not made parties through proper service." The First Circuit also observed that, contrary to Chowdhury's argument on appeal, "the fact that non-parties do not, or cannot, dispute alter ego allegations that would permit both serving them and holding them liable on the judgment does not obviate the need to call them before the court before entering judgment." Consequently, the First Circuit remanded the case to the district court. Because the

---

[1] The record reflects that Booth Sweet retained most of these funds to cover attorneys' fees owed by Chowdhury.

3

bankruptcy proceedings remained ongoing in Minnesota, however, the remanded *AF Holdings* case was automatically stayed. *See* 11 U.S.C. § 362.

The Chapter 7 Trustee filed an adversary complaint in the bankruptcy court against Appellants on November 18, 2016, seeking to recover the $71,620.90 that had been paid in satisfaction of the *AF Holdings* judgment, plus costs and interest (the adversary proceeding). Hansmeier subsequently sought declaratory relief against the Chapter 7 Trustee as to which portion of the funds used to satisfy the *AF Holdings* judgment was the property of the bankruptcy estate. Hansmeier and the Chapter 7 Trustee settled that dispute pursuant to a written settlement agreement. Under the settlement agreement, the Chapter 7 Trustee agreed to assign to Hansmeier the bankruptcy estate's interest in the claims asserted in the adversary proceeding against Appellants for the recovery of the *AF Holdings* judgment. The settlement agreement also provides that, if Hansmeier recovers any portion of the *AF Holdings* judgment from Appellants, the bankruptcy estate is entitled to the first $25,000, Hansmeier is entitled to the second $25,000, and any additional recovered amount will be divided equally between the bankruptcy estate and Hansmeier.

The bankruptcy court approved the settlement agreement between Hansmeier and the Chapter 7 Trustee on December 6, 2017. Subsequently, in January 2018, the bankruptcy court granted Hansmeier's waiver of discharge[2] and approved a stipulation to substitute Hansmeier for the Chapter 7 Trustee as the plaintiff in the adversary proceeding.

---

[2] As a result of this waiver of discharge, the automatic stay of the *AF Holdings* case in Massachusetts was lifted. Thereafter, Chowdhury moved to join or substitute Hansmeier as a judgment debtor in the *AF Holdings* case. The district court denied that motion on January 31, 2019.

4

Appellants subsequently moved to dismiss the adversary complaint, and Hansmeier cross-moved for summary judgment. Following a hearing, the bankruptcy court denied Appellants' motion to dismiss and granted Hansmeier's motion for summary judgment on March 7, 2018. This appeal followed.

## ANALYSIS

In bankruptcy proceedings, a district court sits as an appellate court and reviews the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *Reynolds v. Pa. Higher Educ. Assistance Agency*, 425 F.3d 526, 531 (8th Cir. 2005). A bankruptcy court's grant of summary judgment is reviewed de novo. *Caldwell v. DeWoskin*, 831 F.3d 1005, 1008 (8th Cir. 2016).

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, there is "no genuine dispute as to any material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056 (providing that Rule 56, Fed. R. Civ. P., applies to adversary proceedings); *see also Windstream Corp. v. Da Gragnano*, 757 F.3d 798, 802-03 (8th Cir. 2014). A genuine dispute as to a material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must cite "particular parts of materials in the record" that support any assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1)(A); *accord Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

5

Appellants argue that the bankruptcy court lacked subject-matter jurisdiction over Hansmeier's claims in the adversary proceeding and that this Court should withdraw the adversary proceeding from the bankruptcy court to this Court. Appellants also contend that, even if there were subject-matter jurisdiction, the bankruptcy court erred by granting summary judgment to Hansmeier for several reasons. The Court addresses each argument in turn, beginning with Appellants' jurisdictional arguments.

## I. Subject-Matter Jurisdiction

Bankruptcy courts have subject-matter jurisdiction over civil proceedings "arising under title 11, or arising in or related to cases under title 11." *In re McDougall*, 587 B.R. 87, 90 (B.A.P. 8th Cir. 2018) (quoting 28 U.S.C. § 1334(b)). Such proceedings are either "core proceedings" or "non-core, related proceedings." *Id.* A core proceeding is a proceeding "that arises only in bankruptcy or involves a right created by federal bankruptcy law." *Id.* (internal quotation marks omitted). Non-core related proceedings "do not invoke a substantive right created by federal bankruptcy law and could exist outside of a bankruptcy, although they may be related to a bankruptcy." *Id.* (internal quotation marks omitted). Here, Appellants argue that the bankruptcy court lacked subject-matter jurisdiction over the adversary proceeding because it was neither a core proceeding nor a non-core related proceeding.

Core proceedings are those either "arising under" federal bankruptcy law or "arising in" a case brought under federal bankruptcy law. *In re Farmland Indus., Inc.*, 567 F.3d 1010, 1017-18 (8th Cir. 2009) (quoting 28 U.S.C. § 157(b)(1)). Proceedings "arising under" federal bankruptcy law are "those proceedings that involve a cause of action created

6

or determined by a statutory provision of title 11." *Id.* at 1018 (internal quotation marks omitted). Proceedings "arising in" a bankruptcy case are proceedings "that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* (internal quotation marks omitted). Proceedings that "arise in" a bankruptcy case involve "claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Id.* (quoting *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006)). Core proceedings may include, but are not limited to, sixteen categories enumerated in Title 28, United States Code, Section 157(b)(2).

The claims at issue here are for restitution and unjust enrichment, which undisputedly are state-law claims. The bankruptcy court concluded, however, that "these are core matters because they deal with transfers of the bankruptcy estate" and involve "restitution for the payment of funds from the bankruptcy estate." The bankruptcy court's decision does not expressly reference any of the categories enumerated in Section 157(b)(2). But the claims appear to implicate at least four of these categories—namely, matters concerning the administration of the estate, the allowance or disallowance of claims against the estate, counterclaims by the estate against persons filing claims against the estate, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. *See* 28 U.S.C. § 157(b)(2)(A)-(C), (O). Indeed, Appellants noticed their appearance in the bankruptcy proceedings as "Judgment Creditors" in July 2015 and filed a proof of claim as to the *AF Holdings* judgment lien in November 2015. And the payment Hansmeier subsequently made to Appellants, which he

7

now seeks to recover, was ordered by the bankruptcy court to satisfy the *AF Holdings* judgment lien. Moreover, pursuant to the settlement agreement between Hansmeier and the Chapter 7 Trustee, which the bankruptcy court approved, the bankruptcy estate is entitled to a portion of any money Hansmeier recovers from Appellants.

Appellants argue that Hansmeier's recovery of the *AF Holdings* judgment affects neither Hansmeier nor his estate because the creditors have settled and "there remains no estate left to administer." Appellants also contend that proceedings are not core proceedings "simply because they may involve property of the estate which one day may be used to satisfy creditors." Hansmeier counters that the adversary proceeding is core because it relates to the gathering of assets and the division of those assets among creditors.

Even if a proceeding arguably fits into one of the enumerated examples in Section 157(b)(2), it is not a core proceeding if it does not "arise under or arise in a bankruptcy case." *In re Schmidt*, 453 B.R. 346, 351 (B.A.P. 8th Cir. 2011) (citing *Stern v. Marshall*, 564 U.S. 462, 476-77 (2011)). Claims are not "core" if the "causes of action existed under state law, regardless of the bankruptcy filing." *Id.*; *see also Ritchie Capital Mgmt., L.L.C. v. Opportunity Fin., L.L.C.*, 511 B.R. 603, 610-11 (D. Minn. 2014) (holding that the state-law claims at issue were non-core because they involved issues that were not raised in the bankruptcy proceedings and could have been brought in state court "regardless of whether the . . . bankruptcy case existed"); *Fifty Below Sales & Mktg., Inc. v. Helal*, 490 B.R. 885, 896 (D. Minn. 2013) (holding that claims at issue were non-core because they did not "fit directly into the two functions of bankruptcy relief—the administration of the estate (the gathering of assets and their division among creditors) and the grant of discharge").

8

In *Schmidt*, the Eighth Circuit Bankruptcy Appellate Panel held that a creditor's state-law replevin actions did not involve bankruptcy causes of action and were not core proceedings. 453 B.R. at 350-51. But the *Schmidt* court observed that the creditor had *not* filed a proof of claim against the bankruptcy estate in the bankruptcy proceeding and that, had the creditor done so, the matters would have been core proceedings. *Id.* at 351 (observing that, if the creditor "were to file proofs of claim in the Debtors' bankruptcy cases based on the guaranties, the resolution of those claims would be core, inasmuch as the allowance or disallowance of claims against a debtor's bankruptcy estate is a matter that arises under the Bankruptcy Code"); *see also In re Civic Partners Sioux City, LLC*, 2012 WL 761361, at *9 (Bankr. N.D. Iowa Mar. 8, 2012) ("The fact that both creditors here filed their proof of claims, and based those claims on the claims in their adversary complaints, makes them core proceedings under *Schmidt*."). Unlike the debt in *Schmidt*, the *AF Holdings* judgment lien was the subject of a proof of claim filed by Appellants in the bankruptcy proceeding, and the debtor seeks to recover money that was paid pursuant to a bankruptcy court order to satisfy that proof of claim. The bankruptcy court's conclusion that the adversary proceeding in this case was "core" is consistent with the reasoning in *Schmidt*.

Deciding who was entitled to the money that was the subject of the *AF Holdings* judgment lien was central to the resolution of both the Appellants' proof of claim in the bankruptcy proceeding and the claims asserted in the adversary proceeding. *Cf. Stern*, 564 U.S. at 499, 503 (recognizing that bankruptcy courts may enter final judgment on state-law counterclaim that "stems from the bankruptcy itself or would necessarily be resolved in the

9

claims allowance process"). The claims asserted in the adversary proceeding clearly stem, at least in part, from the bankruptcy proceeding and the claims allowance process. Indeed, the Chapter 7 Trustee commenced the adversary proceeding by asserting a right of recovery created by federal bankruptcy law, and the Chapter 7 Trustee's restitution and unjust-enrichment claims would not exist but for the bankruptcy court's prior order addressing the satisfaction of the *AF Holdings* judgment lien. *See id.* at 498-99 (distinguishing "a state tort action that exists without regard to any bankruptcy proceeding," which is not a "core" proceeding, from actions asserting a right of recovery or avoidance of transfer under Title 11). Moreover, contrary to Appellants' argument that these claims will have no impact on the bankruptcy estate, the bankruptcy estate retains an interest in any money Hansmeier recovers from Appellants in the adversary proceeding.

In summary, under federal bankruptcy law and consistent with the reasoning in *Stern* and *Schmidt*, the adversary proceeding here was a "core" proceeding. Accordingly, the bankruptcy court had subject-matter jurisdiction over the claims raised therein.

**II.      Appellants' Motion to Withdraw the Reference to the Bankruptcy Court**

Appellants move to withdraw the adversary proceeding from the bankruptcy court to this Court. Hansmeier opposes the motion. Congress has authorized district courts to refer bankruptcy proceedings to the bankruptcy judges in their district. *Id.* at 473. The District of Minnesota has referred all bankruptcy cases and related proceedings to the bankruptcy judges in this District. *See Kelley v. JPMorgan Chase & Co.*, 464 B.R. 854, 859 (D. Minn. 2011). A district court may withdraw any case or proceeding referred to the bankruptcy court. *Id.* (citing 28 U.S.C. § 157(d)). Withdrawal of the reference of a

10

proceeding to the bankruptcy court can be discretionary or mandatory. *Id.* at 859 n.6. Here, Appellants do not contend that mandatory withdrawal is warranted. Consequently, only discretionary withdrawal is at issue.

With respect to discretionary withdrawal, a "district court may withdraw, in whole or in part, any case or proceeding referred under this section, . . . on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Discretionary withdrawal "is permitted in only a limited number of circumstances" and "is an exception to the general rule that bankruptcy proceedings should be adjudicated in the bankruptcy court unless withdrawal is essential to preserve a higher interest." *Kelley*, 464 B.R. at 860 (internal quotation marks omitted). The party seeking withdrawal has the burden of showing that discretionary withdrawal is warranted. *Id.* Although Section 157(d) does not define what degree of "cause" warrants withdrawal, courts have considered factors including judicial economy, discouraging forum shopping, avoiding delay and unnecessary costs to the parties, promoting uniformity in bankruptcy administration, and accounting for a party's jury demand. *Id.* at 860-61. In addition, with respect to "core" bankruptcy proceedings, "the party seeking withdrawal must overcome the presumption that bankruptcy courts, and not district courts, should determine core matters." *Id.* at 860 (internal quotation marks omitted). In light of the Court's conclusion that the adversary proceeding in this case was a "core" proceeding, Appellants must overcome this presumption against withdrawal.

As a threshold matter, Hansmeier argues that Appellants' motion for discretionary withdrawal is untimely. A motion to withdraw a reference to the bankruptcy court must be "timely." 28 U.S.C. § 157(d). Although the statute does not define timeliness in this

11

context, courts generally construe the timeliness requirement to mean that a party seeking withdrawal must file a motion "as soon as practicable" or "at the first reasonable opportunity after the moving party has notice of the grounds for withdrawal, depending on the facts of each case." *In re H & W Motor Express Co.*, 343 B.R. 208, 213 (N.D. Iowa 2006) (internal quotation marks omitted) (collecting cases); *accord In re Stephens*, Nos. 12-1144, 12-1145, 12-1423, 12-1424, 2012 WL 4758354, at *1 (D. Minn. Oct. 4, 2012) (declining to exercise discretion to withdraw reference in light of bankruptcy court's "long management" of the case and observing that the motion, filed after movants had appealed bankruptcy court's adverse ruling, was untimely "by any measure").

Here, the adversary proceeding commenced on November 18, 2016, but Appellants did not move to withdraw the adversary proceeding from the bankruptcy court until nearly 18 months later, on May 8, 2018. Appellants contend that their motion is timely because the grounds for withdrawal did not arise until the Chapter 7 Trustee transferred the claims in the adversary proceeding to Hansmeier in January 2018. But these facts were known to Appellants at least as early as December 6, 2017, when the bankruptcy court approved the settlement agreement between the Chapter 7 Trustee and Hansmeier. Despite this knowledge, Appellants did not move to withdraw the adversary proceeding from the bankruptcy court until more than five months later.

Even assuming Appellants could not file a motion to withdraw until after the adversary claims were transferred to Hansmeier in January 2018, the "first reasonable opportunity" to move for withdrawal would have been at that time. But Appellants did not do so. Instead, Appellants filed a motion to dismiss on February 21, 2018; filed a brief in

12

opposition to Hansmeier's motion for summary judgment on March 2, 2018; and argued both motions before the bankruptcy judge at a March 7, 2018 hearing. After the bankruptcy judge ruled against Appellants at the March 7, 2018 hearing and entered a final judgment against them that same day, Appellants appealed the bankruptcy court's summary judgment decision to this Court on March 20, 2018. Not until more than a month after that did Appellants move to withdraw the adversary proceeding from the bankruptcy court. Even if this four-month passage of time were not significant enough to render Appellants' motion untimely, their conduct during those four months is inconsistent with a need or desire to withdraw the adversary proceeding from the bankruptcy court. Appellants continued to litigate the merits of the claims in the bankruptcy court, and only *after* receiving an unfavorable dispositive ruling from the bankruptcy court did Appellants file a motion to withdraw.

Because Appellants' motion to withdraw the reference to the bankruptcy court is untimely, the motion is denied.[3]

### III. Appeal of the Bankruptcy Court's Summary Judgment Order

Appellants argue that the bankruptcy court erred by granting Hansmeier's motion for summary judgment for several reasons. The Court addresses each of Appellants' arguments in turn.

---

[3] In light of this conclusion, the Court need not address the other factors that courts consider when evaluating a motion for discretionary withdrawal of a reference to the bankruptcy court. *See, e.g.*, *Stephens*, 2012 WL 4758354, at *1 (denying untimely motions to withdraw reference without addressing other factors).

13

### A. Restitution and Unjust Enrichment

Appellants first argue that restitution is an equitable remedy for which unjust enrichment is a predicate to recovery. According to Appellants, summary judgment was not proper because Hansmeier did not establish that Appellants were unjustly enriched.

The adversary complaint advances claims for restitution and unjust enrichment, and Hansmeier sought summary judgment from the bankruptcy court as to both claims. Minnesota law recognizes restitution and unjust enrichment as equitable claims to relief. *See Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1070 (D. Minn. 1999); *State ex rel. Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 492, 497-98 (Minn. 1996). "Restitution prevents the unjust enrichment of the defendant at the plaintiff's expense." *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equip., LLC*, 813 N.W.2d 49, 58 (Minn. 2012). In Minnesota, to prevail on an unjust-enrichment claim, a plaintiff "must show that the defendant has knowingly received or obtained something of value for which the defendant in equity and good conscience should pay." *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1099 (D. Minn. 2017) (quoting *ServiceMaster of St. Cloud v. GAB Bus. Servs., Inc.*, 544 N.W.2d 302, 306 (Minn. 1996)). In addition, the benefit received by the defendant "must be obtained unjustly—illegally or unlawfully—or in situations in which it would be morally wrong for one party to be enriched at the expense of another." *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012) (internal quotation marks omitted) (applying Minnesota law).

"It is a long-standing legal principle that '[a] person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is

14

reversed or set aside, unless restitution would be inequitable . . . .' " *Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996) (quoting Restatement of Restitution § 74 (1937)); *accord In re Popkin & Stern*, 263 B.R. 885 (B.A.P. 8th Cir. 2001) (stating that bankruptcy court correctly determined that, under Missouri law, a party is entitled to restitution "of all benefits acquired under [an] erroneous judgment" upon reversal of that judgment). This legal principle also is recognized under Minnesota law:

> A person whose property is taken under a judgment . . . is entitled to restitution of the property . . . if the judgment is reversed. The plain reason for the rule is that reversal of a judgment nullifies it and restores the parties to the same situation in which they were prior to its rendition and that for that reason it is unjust that the party should retain any benefits received under the reversed judgment.

*Carl v. De Toffol*, 25 N.W.2d 479, 483 (Minn. 1946) (internal citations omitted); *cf. Oldewurtel v. Redding*, 421 N.W.2d 722, 728 (Minn. 1988).

Appellants argue that Hansmeier has not proven unjust enrichment because he has "made no attempt to show any unlawful or illegal conduct by Appellants." But it is undisputed that Appellants received money from Hansmeier based on a judgment that the First Circuit subsequently vacated on appeal. A vacated judgment is a legal nullity, and "has the same practical effect as reversal." *Kulinski v. Medtronic Bio-Medicus, Inc.*, 577 N.W.2d 499, 502 (Minn. 1998); *accord* Black's Law Dictionary 1782 (10th ed. 2014) (defining "vacate" to mean "[t]o nullify or cancel; make void; invalidate"). As the foregoing decisions make clear, it is a well-established legal principle that a party is unjustly enriched if the party retains property received pursuant to a judgment that has been nullified. Although Appellants did not unlawfully *obtain* the payment at issue here, their

15

continued *retention* of money received by virtue of a judgment that has been nullified is contrary to well-established law. Thus, Appellants' argument that their retention of the *AF Holdings* judgment is not unjust because it was not unlawfully obtained lacks merit.

Appellants argue in the alternative that the equities in this case do not warrant an award of restitution. As Appellants correctly observe, the general rule that a person is entitled to restitution of money paid based on a judgment that has been reversed "is not without exceptions," and restitution may not be required if "restitution would be inequitable." *Mohamed*, 91 F.3d at 1126. One such exception is that "equity will not compel restitution from a third party who receives monies, in good faith, from the initial judgment creditor in payment of a debt." *Id.* But this "innocent payee" exception is not implicated here. Appellants are not third-party recipients of the *AF Holdings* judgment, they are the direct beneficiaries of that judgment. A bona fide third-party payee of a judgment creditor may assert an affirmative defense to a claim for restitution. *In re Borsos*, 544 B.R. 201, 210 (E.D. Cal. 2016) (citing Restatement (Third) of Restitution § 18 cmt. g). By contrast, when "restitution is sought from the judgment creditor (*as opposed to a third party*), and [when] both parties are before the court, *restitution is virtually automatic*." *Id.* at 205 (emphasis added). The "innocent payee" exception does not apply here.

Appellants also contend that the equities do not warrant an award of restitution because Hansmeier is the alter ego of AF Holdings. Appellants request that this Court take judicial notice of other court proceedings—including Hansmeier's guilty plea in a separate criminal proceeding in this District—pertaining to Hansmeier's relationship with AF Holdings and other fraudulent conduct. But even if true, none of these facts transforms

16

the nullified *AF Holdings* judgment into a legally enforceable judgment. As the First Circuit observed when vacating the *AF Holdings* judgment, the fact that Hansmeier has not or cannot dispute alter-ego allegations against him "does not obviate the need to call [him] before the court before entering judgment." Appellants undisputedly received money based on a judgment that has been vacated and thus rendered legally null and void. This fact remains true regardless of what legal conclusions or admissions by Hansmeier have been made in separate court proceedings, which have no bearing on the legal status of the *AF Holdings* judgment. On this record, the relevant equities do not undermine the bankruptcy court's conclusion that restitution is warranted.

Reversal of the bankruptcy court's summary judgment decision is not warranted on this basis.

### B. Genuine Dispute of Material Fact

Appellants also argue that the bankruptcy court's summary judgment decision is improper because a genuine dispute of material fact exists—namely, the applicability of Appellants' defense under the "voluntary payment doctrine." According to Appellants, Hansmeier "knew that he was paying a judgment that he believed was improper," and Hansmeier's knowledge and the voluntariness of his payment are issues of fact that only a jury can decide.

"The voluntary payment doctrine provides that one who has knowledge of the material facts and makes a payment voluntarily cannot later recover it on the ground he or she was under no legal obligation to make the payment in the first place." *Minn. Pipe & Equip. Co. v. Ameron Int'l Corp.*, 938 F. Supp. 2d 862, 874 (D. Minn. 2013). But the

17

voluntary payment doctrine does not apply when the payor was under a legal obligation to pay. *Id.* at 875. Here, Hansmeier sought permission from the bankruptcy court to sell the homestead property, and thereafter paid $71,620.90 of the proceeds of the sale to Appellants to satisfy the *AF Holdings* judgment lien on the property. The timing of that payment, in December 2015, is critical to the applicability of the voluntary payment doctrine. It is undisputed that, in December 2015, the *AF Holdings* judgment had not yet been vacated and Hansmeier *was* under a legal obligation to pay Appellants. The fact that the First Circuit later voided that legal obligation does not demonstrate that Hansmeier "was under no legal obligation to make the payment *in the first place*," which is a "key premise of the voluntary payment doctrine." *Id.* at 874-75 (emphasis added). Moreover, the bankruptcy court's December 3, 2015 order authorizing the sale of Hansmeier's homestead property created an additional legal obligation to pay. Even if Hansmeier subjectively *believed* that the *AF Holdings* judgment was improper, his subjective belief has no bearing on whether he was legally obligated to make that payment in December 2015. He indisputably was legally obligated to do so.

For these reasons, reversal of the bankruptcy court's summary judgment decision is not warranted on this basis.

### C. Reliance on Unbriefed Issues

Appellants argue that the bankruptcy court's summary judgment decision should be reversed because it relies on an issue that was not briefed by the parties. In particular, Appellants contend that the bankruptcy court premised its summary judgment decision on

18

the parties' failure to inform the bankruptcy court, in December 2015, that the *AF Holdings* judgment had been appealed to the First Circuit.

It is true that the bankruptcy court suggested at the summary judgment hearing that it would not have ordered the payment to Appellants in the first place had it known that an appeal of the *AF Holdings* judgment was pending. But when viewed in context, the bankruptcy court's statements to this effect clearly were not necessary to its decision. Reversal of the bankruptcy court's summary judgment decision is not warranted on this basis.

### D. Judgment Granted to Non-Party

Appellants contend that the bankruptcy court erred by granting summary judgment to a non-party, namely, the Chapter 7 Trustee.

The transcript of the bankruptcy court's oral order, the bankruptcy court's subsequent written order, and the judgment all indicate that summary judgment was granted in favor of Hansmeier. The written order states that "the plaintiff's motion for summary judgment . . . is granted," and both the written order and judgment provide that "plaintiff shall recover from the defendants $71,620.90." Although the written order and judgment also state that the judgment is "payable jointly to Randall L. Seaver, the chapter 7 trustee, and the plaintiff, Paul Hansmeier," this allocation of the payment merely reflects the terms of the settlement agreement between the Chapter 7 Trustee and Hansmeier. Appellants have provided no legal authority for reversing the bankruptcy court's decision based on this language.

19

Accordingly, reversal of the bankruptcy court's summary judgment decision is not warranted on this basis.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED:**

1. Appellants/Defendants Sandipan Chowdhury and Booth Sweet LLP's motion to withdraw the reference of the adversary proceeding from the bankruptcy court, (Case Number 18-cv-1433 at Dkt. 1), is **DENIED**.

2. The bankruptcy court's March 7, 2018 summary judgment order is **AFFIRMED**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: February 21, 2019                    s/Wilhelmina M. Wright
                                            Wilhelmina M. Wright
                                            United States District Judge